419 A.2d 109

**COMMONWEALTH of Pennsylvania,**

v.

**Darryl D. RAWLS, Appellant.**

Superior Court of Pennsylvania.

Submitted March 23, 1979.

Filed March 14, 1980.

Petition for Allowance of Appeal Granted Oct. 13, 1980.

John W. Packel, Assistant Public Defender, Chief, Appeals Division, Philadelphia, for appellant.

Eric B. Henson, Assisant District Attorney, Philadelphia, for Commonwealth, appellee.

Before VAN der VOORT, HESTER and WIEAND,* JJ.

HESTER, Judge:

Following an eleven day jury trial, appellant Darryl D. Rawls was found guilty of rape, conspiracy, possession of instruments of crime, and unlawful restraint, (Crimes Code, 18 Pa. C.S.A., §§ 3121, 903, 907, 2902, respectively), all evolving from the abduction and rape of a young woman in Philadelphia. Two co–defendants were also convicted of several crimes related to the incident. Post–trial motions were argued and denied and an aggregate sentence of eight to twenty years imprisonment was imposed. On this appeal, appellant posits various trial court and prosecutorial errors in support of his request for a new trial. We find his contentions without merit and will therefore affirm.

Facts adduced at trial established that on the afternoon of October 18, 1976, the victim was waiting for a trolley on the corner of Germantown and Somerset Avenues in Philadel-

* Judge DONALD E. WIEAND is sitting by special designation.

phia. Suddenly, a man approached and asked her where she lived, after which he placed an ice pick at her side and escorted her to a house on Eighth Street, a few blocks away. Along the way, the complainant noticed that appellant and co–defendant Eddie Rhodes passed her on the sidewalk heading towards the Eighth Street residence. When the victim arrived at the house, she observed about seven or eight men on the first floor, including appellant and Rhodes. Appellant secured the ice pick and ordered the young woman upstairs and onto a bed. There, she was required to "snort" a white powdery substance. Appellant Rawls then removed the victim's clothing below the waist and raped her. Rhodes grabbed her coat and money, while co–defendant Daniel Griffin entered the room to have sex with her. Shortly afterward, the men allowed the woman to leave and warned her to tell no one. She immediately reported the crime to the police after which appellant, Rhodes, and Griffin were quickly apprehended. Griffin confessed to the crime, naming as accomplices appellant and Rhodes.

Appellant's defense suggested that the victim fully consented to the sexual acts and only brought charges when her coat and money were not returned to her. Of the three defendants, Rhodes was the only one to take the stand.[1]

On appeal, appellant's principal contention is that Griffin's confession, which was admitted at trial, violated his right to confront adverse witnesses contrary to the rule on *Bruton v. U. S.*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Specifically Detective Joseph Carlin of the Philadelphia Police Department testified that, after his arrest, Griffin gave a statement implicating himself in the rape. Before the confession was read to the jury, the court and counsel excised therefrom all named references to appellant and Rhodes. Thus, the statement, as edited, was read to the jury by Detective Carlin as follows:

1. Rhodes' conviction for conspiracy and theft in this incident was affirmed by this Court *per curiam* on June 22, 1979 (J. 340/79), allocatur granted, December 19, 1979.

The Witness: "Answer: I was in the kitchen of my mother's house at 2828 North Eighth Street, with two of my friends. We were fixing motor bikes. Some other fellows came into the house and they had a girl with them. They sat in a little room for awhile; they were talking about some drugs. Then they went upstairs. Then me and my friends also went upstairs. Some of the fellows and the girl went into the middle room and closed the door. Me and my friends went into my mother's room; there is a door between my mother's room and the second floor middle bedroom and the door has a lot of holes in it. We took turns peaking through the holes, at what was going on.

I saw they were on the bed and the girl was crying. Then one of the guys came out of the middle room and asked me if I wanted some. I said that I would think about it. A couple of minutes later I went into the middle room. The girl was lying on the bed and her pants were back up. Someone pulled her pants back down. She was on the bed, on her back, and I got on her. I got inside her a couple of seconds and got right out, because she started crying. I got off of her and she pulled her pants back up. I got out of the room and left the house. Someone took the girl's coat and someone took her wallet, and the girl started crying hard." N.T. 516–518.

Before the confession was introduced, the court instructed the jury that the statement was to be considered as evidence only against Griffin and not against anyone else. N.T. 515–516.

Appellant concedes that the statement on its face does not name him as one of the participants in the crime. He contends, however, that the activities ascribed therein to unnamed persons mesh so completely with other evidence at the trial that the jury must have certainly "read in" appellant's name to the Griffin confession and that he was thus denied his right to confront an accuser. Such an argument misconstrues the scope of the *Bruton* decision.

In *Bruton*, co–defendant Evans' confession, which implicated Bruton in a robbery, was read to the jury. The trial court, in accord with *Delli Paoli v. U. S.*, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d°278 (1957) admitted the confession unedited and cautioned the jury that Evans' confession was inadmissible hearsay against Bruton and was to be considered only against Evans. Evans exercised his privilege not to testify. The Supreme Court set aside Bruton's conviction, overruling *Delli Paoli* because "of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining [Bruton's] guilt." 391 U.S. at 126, 88 S.Ct. at 1622. The Court emphasized that Evans' statement was "powerfully incriminating" as to Bruton since it directly inculpated him in the crime and that Evans' confession "added substantial, perhaps even critical, weight to the Government's case." id. at 128, 88 S.Ct. at 1623. The Court thus held that Bruton had been denied his right of confrontation since Evans' extrajudicial statement inculpating him went to the jury without Bruton having the opportunity to cross–examine Evans.

In response to *Bruton*, our courts have approved the practice of redaction, in which all testimonial references in a confession to anyone other than the declarant are omitted therefrom. *Commonwealth v. Johnson*, 474 Pa. 410, 378 A.2d 859 (1977); *Commonwealth v. Guess*, 266 Pa.Super. 359, 404 A.2d 1330 (1979); cf. *Bruton* at fn. 10. "The jury is thus not permitted to consider the nontestifying co–defendant's confession in assessing the defendant's culpability." *Commonwealth v. Young*, 263 Pa.Super. 333, 337, 397 A.2d 1234, 1237 (1979).[2] Other courts have held that a statement made

2. Where redaction is not possible or would work prejudice, the court may either grant a defense motion to sever the trials or forbid any use of the confession at the joint trial. *Commonwealth ex rel. Berkery v. Myers*, 429 Pa. 378, 384 n.4, 239 A.2d 805 n.4 (1968). If the defendant fails to timely request these remedies, he may be precluded from complaining later that the redacted confession was prejudicial to him. *Commonwealth v. Young*, supra. In the instant case, appellant's counsel orally moved to sever his case from the others after the case was called to trial. However, it was established

by one defendant, redacted so as not to inculpate a co–defendant on its face, is admissible in a joint trial even though other evidence in the case indicates that a co–defendant not mentioned in the statement was also involved in the activities described. *U. S. v. Belle,* 593 F.2d 487 (3 Cir., 1979); *U. S. v. Stewart,* 579 F.2d 356 (5 Cir., 1978); *U. S. v. Dady,* 536 F.2d 675 (6 Cir., 1976); *U. S. v. Wingate,* 520 F.2d 309 (2 Cir., 1975); *U. S. v. Trudo,* 449 F.2d 649 (2 Cir., 1971). Thus, in *Belle,* the court stated "[Where] a co–defendant's extrajudicial statement does not directly implicate the defendant . . . the *Bruton* rule does not come into play . . . For example, courts . . . have consistently approved the use at joint trials of co–defendants' confessions where all references to the complaining defendant have been redacted, at least if the redacted versions do not explicitly suggest the participation of the complaining defendant." 593 F.2d at 493.

In a number of cases, non–confessing defendants have argued "contextual inculpation" as does the instant appellant, viz: the edited confession, when read in light of other evidence connecting the defendant to the crime, tends to identify him as a participant, thus violating *Bruton.* The courts have consistently rejected such an argument and have found *Bruton* inapplicable since the redacted statement was not "powerfully incriminating" as to the defendant. In *Wingate,* for example, a co–defendant's redacted confession had been admitted into evidence with cautionary instructions. The complaining defendant (Wingate) argued that the statement, read in light of other evidence connecting him with the declarant, tended to identify him as a co–conspirator. The Second Circuit disagreed reasoning that the co–defendant's statement did not sufficiently incriminate Wingate inasmuch as, "[O]nly when combined with considerable other evidence, which amply established Wingate's guilt

that appellant was unrepresented at the redaction hearing one month earlier. The court thus found that appellant's counsel was unaware of the ground for severance prior to his oral motion and considered the request on its merits. See, former Pa.R.Crim.P. 305. We likewise will not find waiver under these circumstances.

[did] the statements tend to incriminate him." 520 F.2d at 314. Similarly, in *U. S. ex rel. Nelson v. Follette*, 430 F.2d 1055 (2 Cir., 1970) two defendants, Biggins and Nelson, were tried jointly for a bank robbery. Biggins confessed, naming one "Oliver" as his accomplice and physically describing "Oliver". The confession also stated that Biggins and "Oliver" were at a certain bar just prior to the robbery. Other evidence at the trial established a close physical resemblance between Nelson and "Oliver" and further that Nelson and Biggins were often seen together at the bar mentioned in the confession. Nelson contended that confession, considered in light of the other evidence, "necessarily implicated" him as "Oliver". The court held no *Bruton* violation had occurred: "Biggins' statements were not clearly inculpatory because they alone did not serve to connect Nelson with the crime . . . Biggins' statements were not the type of powerfully incriminating statements to which the court had reference in *Bruton*." 430 F.2d at 1058.

In *U. S. v. Holleman*, 575 F.2d 139 (7 Cir., 1978); *U. S. v. Knuckles*, 581 F.2d 305 (2 Cir., 1978); *U. S. v. English*, 501 F.2d 1254 (7 Cir., 1974); and *U. S. v. Lipowitz*, 407 F.2d 597 (3 Cir., 1969), the specific names of the defendants were excised from the confessors' statements and substituted with such words as "other individuals", "other persons", "we", "a male individual". In each case, the defendant whose name had been deleted alleged that the redaction was insufficient since the confession, when considered along with other evidence, clearly revealed the defendant to be the "male individual" or "other person" referred to in the confession. In each case, the court rejected this argument finding the statement, as edited, did not mention the defendant by name, was not "clearly inculpatory" as to him, and thus not "powerfully incriminating."[3] In each case, further, cautionary instructions were given to the jury.

**3.** The courts have uniformly rejected the practice of merely substituting the word "Blank" for the defendant's name in the confession. "The *Bruton* court . . . suggested redaction of the confession and it is difficult to believe that this suggestion contemplated the deletion of the defendant's name and the substitution of the word

■ We think the reasoning of the foregoing cases is dispositive of the instant appeal. Appellant was not mentioned in the confession as edited. References were made to "other fellows", "they", "someone", "one of the guys", but not to anyone by name. Griffin's admission implicated no one but Griffin. The statement, unlike that in *Bruton*, does not shift responsibility to the appellant. The challenged statement may implicate appellant only insofar as other "connecting evidence" may tie appellant to the rape and to Griffin but we do not believe that the *statement qua statement* can be said to be "powerfully incriminating" to appellant since it alone did not serve to connect him with the crime. See *U. S. v. Belle*, supra, 593 F.2d 487, 494 (3 Cir., 1979). Further, we note that the "connecting evidence" (i. e., the testimony of the victim identifying appellant as a rapist) was subject to probing and extensive cross–examination by all three defense attorneys. Hence, the constitutional underpinning of *Bruton* –the Sixth Amendment right of confrontation and cross–examination–was fully honored in this case. Moreover, the jury was cautioned to consider the statement as evidence only against Griffin and not against any of the co–defendants. Finally, Griffin's confession was not in any way "critical" to the Commonwealth's case against appellant. *Bruton*, 391 U.S. at 128, 88 S.Ct. at 1623. Clearly, the testimony which led to appellant's conviction was that of the victim and her in–court identification of him as one of the perpetrators. Griffin's statement, as redacted, was simply not the type of incrimination which would lend "substantial, perhaps critical, weight" to the prosecution's case. We thus conclude the introduction of the Griffin confession did not contravene *Bruton* or violate appellant's rights to confront adverse witnesses. Compare *Nagle*, supra with *Guess*, supra. See also, *Parker v. Randolph*, 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979).

'Blank' ", *U. S. v. Danzey*, 594 F.2d 905, 918 (2 Cir., 1979); *U. S. v. DiGilio*, 538 F.2d 972 (3 Cir., 1976); *Hodges v. Rose*, 570 F.2d 643 (6 Cir., 1978); *Commonwealth v. Nagle*, 253 Pa.Super. 133, 384 A.2d 1264 (1978). But see, *Posey v. U. S.*, 416 F.2d 545 (5 Cir., 1969).

■ In a related argument, appellant contends the court should have declared a mistrial when the prosecutor, in his summation, allegedly tied appellant into the Griffin statement. In his summation, the assistant district attorney read to the jury a portion of the Griffin confession: " 'Then one of the guys came out of the middle room and asked me if I wanted some' ". The prosecutor then stated, "Rawls pushed her on the bed and said he wanted some. Does that coincide with the statement?" N.T. 7/6/77, p. 52. The prosecutor, of course, should not attempt in his summation to refer to the redacted confession for purposes of corroboration when the evidence it corroborates is being used against the nonconfessing defendant. See, *U. S. v. Dady*, 536 F.2d 675 (6 Cir., 1976); *U. S. v. Alvarez*, 519 F.2d 1052 (3 Cir., 1975). Thus, while we cannot condone the assistant district attorney's conduct, neither do we say the error was of such magnitude as to require reversal. The jury was adequately instructed that the statement was to be considered only against Griffin and that arguments of counsel were not to be considered as evidence. "The 'rule'–indeed, the premise upon which the system of jury trials function under the American judicial system–is that juries can be trusted to follow the trial court's instructions." *Parker v. Randolph*, 442 U.S. 62, 75, fn. 7, 99 S.Ct. 2132, 2140, fn. 7, 60 L.Ed.2d 713 (1979); *Commonwealth v. Brown*, 444 Pa. 318, 282 A.2d 364 (1971). Given the extraordinary efforts on the part of the lower court to shield appellant from any incriminatory overtones emanating from the Griffin statement, we cannot say the prosecutor's de minimis slip was such as to require reversal.

■ Next, appellant assigns as error the conduct of the prosecutor in making two references to drug use during the trial. During the testimony of one of the investigating officers, the prosecutor attempted to introduce Exhibit No. 4, a syringe which was seized during the search of the house on Eighth Street. Defense counsel immediately objected, the prosecutor withdrew the exhibit, and the court instructed the jury that the exhibit was not relevant to the case and that they should strike the exhibit from their minds. The

second incident occurred when co-defendant Rhodes, testifying in his own behalf, was being cross-examined. The assistant district attorney queried, "Mr. Rhodes, I notice your hand is swollen. Do you take drugs?" N.T. 7/1/77, p. 163. The court sustained defense objections, denied motions for a mistrial, and instructed the jury to disregard the remark. We do not think either incident, considered separately or in tandem, was sufficiently prejudicial as to require reversal.

We recognize that evidence of prior criminal activity unconnected with that for which an accused stands charged may not be introduced to demonstrate a predisposition towards criminal conduct. *Commonwealth v. Williams*, 470 Pa. 172, 368 A.2d 249 (1971); *Commonwealth v. Allen*, 448 Pa. 177, 292 A.2d 373 (1972); *Commonwealth v. Trowery*, 211 Pa.Super. 171, 235 A.2d 171 (1963). Further, the Supreme Court has acknowledged the stigma which attaches to one who is shown to have surreptitiously used drugs. *Williams* supra; *Commonwealth v. Gaddy*, 468 Pa. 303, 362 A.2d 217 (1976). Notwithstanding the improper introduction of such evidence, the court has stated:

[W]e have never ascribed to the view that all improper references to prior criminal activities necessarily require the award of a new trial as the only effective remedy. Our decisions have indicated that there are situations where the taint, resulting from an improper reference to an unrelated criminal act, may be expunged without resort to the extreme remedy of aborting an otherwise fair trial.

*Williams*, 470 Pa. at 178, 368 A.2d at 252; *Commonwealth v. Tate*, 485 Pa. 180, 401 A.2d 353 (1979); *Commonwealth v. Povish*, 479 Pa. 179, 387 A.2d 1282 (1978). Thus, the mere reference to a defendant's use of or addiction to drugs is not, as a matter of law, so prejudicial as to warrant a new trial and may be cured by appropriate instructions, *Commonwealth v. Rivera*, 470 Pa. 131, 367 A.2d 719 (1976); *Commonwealth v. Quarles*, 230 Pa.Super. 231, 326 A.2d 640 (1974), especially where the reference was not intentional and the nature of the comment was innocuous. *Williams*.

In the instant case, there was, first of all, no showing that the jury itself actually saw the syringe. The exhibit was never identified by the witness or the prosecutor. Defense counsel's objection was immediate and the court stated at sidebar, "I will put it [the exhibit] down so that the jury can't see it." N.T. 407. Moreover, the record does not support the contention that the prosecutor intentionally attempted to place the syringe before the jury in order to "blacken [appellant's] reputation." *Gaddy*, supra, 468 Pa. at 311, 362 A.2d at 221. Defense counsel at sidebar admitted that he was "not blaming [the prosecutor] who probably didn't know" that the syringe had never been introduced at the pre–trial suppression hearing and, as such, was not admissible. Finally, the jury was promptly instructed to disregard any reference to the exhibit.

Similarly, the question concerning co–defendant Rhodes' use of drugs cannot be construed to required reversal as to appellant. The surreptitious use of drugs is no longer punishable by penal sanctions in this Commonwealth. *Williams*, supra. In *Commonwealth v. Rivera*, supra, a passing reference to the appellant as a "junkie" was not found to constitute reversible error, nor were passing references to prior crimes in *Povish*, supra; *Commonwealth v. Corbin*, 268 Pa.Super. 526, 408 A.2d 1128 (1979), and *Commonwealth v. Robson*, 461 Pa. 615, 337 A.2d 573 (1975), or references to "photographs" in *Commonwealth v. Smith*, 454 Pa. 515, 314 A.2d 224 (1973) where curative instructions were given. Moreover, in view of the victim's testimony that she was forced to "snort" a white powder and a statement in the Griffin confession that "they were talking about some drugs", we cannot agree with appellant that drug usage was completely irrelevant to the factual scenario. We think the curative instructions given were adequate to undo any possible prejudice.

Finally, appellant assigns as error the prosecutor's questioning of a defense witness about her religious faith. Mrs. Bernice Rawls, mother of appellant, testified that on the afternoon of the crime her son came into the house to

announce he was looking for one Eddie Ware because "Eddie had took a girl. And she said she was going to call the police and say they raped her and had taken her coat if they didn't get money or her coat back." N.T. 7/5/77, p. 4. On cross–examination, the prosecutor asked "Are you a member of the Islamic faith?", to which Mrs. Rawls replied, "Not yet." id., p. 7. An immediate defense objection was sustained and the jury was charged to disregard the remark.

■ We recognize that a prosecutor is not permitted to question a witness as to his or her religious beliefs for the purpose of affecting the witness' competency or credibility. Act of April 23, 1909, P.L. 140, § 3, 28 P.S. § 313; [4] *Commonwealth v. Hoskins*, 485 Pa. 542, 403 A.2d 521 (1979); *Commonwealth v. Mimms*, 477 Pa. 553, 385 A.2d 334 (1978); *Commonwealth v. Brown*, 247 Pa.Super. 401, 372 A.2d 887 (1977). We think, however, that several significant differences between the foregoing cases and the instant case compel the conclusion that reversal is not warranted. First, the objection herein was immediately *sustained* and the prosecutor was not permitted to pursue the line of religious inquiry. In *Hoskins, Mimms*, and *Brown*, repeated defense objections were *overruled* and the prosecutor, with court approval, made a searching inquiry into the witness' religious affiliations. Clearly, the extensive prejudice occasioned therein is simply not present where the inquiry is terminated at the outset, as was done here. Second, in *Mimms* and *Brown*, the jury was never instructed to disregard the Muslim references, whereas in the case at bar prompt cautionary instructions were given. Third, the witness herein herself opened the door to the challenged questions by repeatedly testifying previously as to her religious tenets.[5] Thus, the challenged question was in some sense evoked by the prior testimony of Mrs. Rawls, unlike the

4. Now, Judicial Code, 42 Pa.C.S.A. § 5902(b).

5. For example, Mrs. Rawls had previously given such unsolicited responses as she "got the faith" N.T. 7/1/77, p. 77; that she is a minister, p. 80; that she is sanctified, p. 86; and that she preaches to co–defendant Rhodes, pp. 84, 92.

prior testimony of witness Morrison in *Mimms* where there had been no religious overtones. 477 Pa. at 558, 385 A.2d at 336. Compare, *Hoskins*, 485 Pa. at 554, 403 A.2d at 527. Fourth, the single question asked herein was not posed "in a manner which reflect[ed] not only on the witness but equally on the defendant." *Mimms* at fn. 8. In *Mimms*, the witness was asked if he *and the appellant* were both Muslims and in *Brown*, the prosecutor repeatedly linked *appellant* and his two alibi witnesses to the Muslim religion. In the instant case, the assistant district attorney asked one question concerning the witness' faith and did not in any way attempt to link appellant to the answer. Accordingly, we cannot say the reference reflected in any way upon the appellant in the manner found offensive in *Mimms* and *Brown*. Viewing all of the "attendant circumstances", *Mimms* at fn. 8, as well as the "atmosphere of the trial", *Hoskins*, we cannot conclude the very limited reference formed "in the minds of the jury bias and hostility toward [appellant] and thus prevent[ed] an objective verdict." *Hoskins*, 485 Pa. at 556, 403 A.2d at 528.

We have reviewed appellant's remaining contentions and find that they are ably answered in Judge Anderson's lengthy Opinion below.

Judgment of sentence affirmed.

WIEAND, J., concurs in the result.