681 A.2d 1295

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Kenyatta MILES, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 25, 1996.

Decided July 31, 1996.

504

Michael Wallace, John Belli, Philadelphia, for Kenyatta Miles.

Catherine Marshall, Karen A. Brancheau, Philadelphia, for Com.

Robert A. Graci, Harrisburg, for Office of Atty. Gen.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION

NEWMAN, Justice.

Kenyatta Miles (Miles) directly appeals from the judgment of sentence imposing the death penalty entered on October 23, 1993 by the Court of Common Pleas of Philadelphia County (trial court). We affirm the verdict and the sentence of death.

## I. FACTS

The evidence at trial established that on March 17, 1990, Allan Gore and Christopher Demby, both fifteen years old, were shopping for new sneakers on the corner of Fifty–Second and Chestnut Streets in Philadelphia. Leroy Thompson, an unlicensed cab driver, testified that he drove eighteen-year old Kenyatta Miles, Andre Kinard and sixteen-year old Michael Henry, co-defendants, to the same shopping center on March 17, 1990. The three co-defendants were searching for someone who had allegedly assaulted Miles earlier in the day. Both Miles and Henry were carrying handguns; Miles had a .357 Magnum and Henry had a .22 caliber pistol.

Demby and Gore each purchased sneakers at Samsung, a store located in that shopping center. When Demby and Gore were leaving the store, Miles approached Gore and asked him about his new sneakers. Gore responded that the sneakers were Jordan's, size eight and one-half. Gore and Demby then went to Jean's World, another store, to purchase hats. Upon exiting Jean's World, Miles and co-defendants Kinard and Henry approached Demby and Gore. Miles pushed Gore against a window and ordered him to hand over his new sneakers. As Miles and Gore were struggling over the bag containing the sneakers, Miles used his .357 Magnum to fire at Gore, but the bullet missed him. Simultaneously, Kinard pushed Demby and attempted to forcibly take his bag containing the sneakers. Then, Henry fired a bullet from his .22 caliber pistol at Demby that did not hit him. Miles fired a second shot that also missed Gore, but his .38 caliber bullet hit Demby in the heart. Miles, Kinard and Henry then fled from the scene carrying Demby's sneaker bag. Demby died at the scene.

On April 4, 1990, police arrested Miles on charges of murder, voluntary manslaughter, aggravated assault, possession of an instrument of crime, generally, and two counts of robbery. The police interviewed Miles concerning the murder. During the interview, Miles confessed to his involvement in Demby's murder. Miles admitted that he fired a handgun in the

shopping center at the corner of Fifty–Second and Chestnut Streets on March 17, 1990. The police also arrested co-defendants Kinard and Henry who gave inculpatory statements to the police.

## II. PROCEDURAL HISTORY

The trial court tried all three co-defendants together. On February 20, 1992, a jury found Miles guilty of murder in the first degree,[1] criminal conspiracy,[2] two counts of robbery,[3] aggravated assault[4] and possessing an instrument of crime.[5] The jury fixed the penalty for first degree murder at death. On October 29, 1993, the trial court imposed the sentence for Miles' other convictions as follows: five to ten years for criminal conspiracy; ten to twenty years for each count of robbery; ten to twenty years for aggravated assault; and two and one-half to five years for possession of an instrument of crime. Thus, the trial court sentenced Miles to thirty-seven and one-half years to seventy-five years on the remaining charges.[6] On February 22, 1995, Miles filed a Notice of Automatic Appeal with this Court.[7]

1. 18 Pa.C.S.A. § 2502.

2. 18 Pa.C.S. § 903.

3. 18 Pa.C.S. § 3701.

4. 18 Pa.C.S. § 2702.

5. 18 Pa.C.S.A. § 907.

6. The jury also found Kinard guilty of second degree murder, criminal conspiracy, and two counts of robbery. The trial court sentenced Kinard to life imprisonment. The jury convicted Henry of first degree murder, possession of an instrument of crime, criminal conspiracy and two counts of robbery. The jury sentenced him to life imprisonment.

7. The trial court, on March 21, 1995, ordered counsel for Miles to file a Statement of Matters Complained of on Appeal in accordance with Pa.R.A.P.1925(b). As of May 17, 1995, Miles' counsel had failed to file the required Statement. In response to trial counsel's failure, the trial court issued a Memorandum Opinion suggesting that we dismiss Miles' appeal. Instead, on February 14, 1996, we entered an Order directing Miles to comply with Rule 1925(b) within thirty days. Pursuant to that order, on February 29, 1996, Miles filed a Statement of Matters Complained of on Appeal and on March 29, 1996, the trial court issued its opinion.

## III. ISSUES

In his Statement of Matters Complained of on Appeal, Miles raises the following six issues:

1. Whether the ineffective and prejudicial redaction of Miles' co-defendants' statements violated Miles' rights under *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

2. Whether the trial court erred in denying Miles' Motion to Sever.

3. Whether the prosecutor made several improper comments that individually and in the aggregate deprived Miles of a fair trial.

4. Whether the trial court committed reversible error during its instruction concerning the crime of murder in the second degree.

5. Whether the trial court erred in denying Miles' Motion to Suppress his statement.

6. Whether the trial court erred in initially overruling Miles' objection to the introduction of inadmissible prior crimes evidence.

### Sufficiency of Evidence

■ Although Miles has not specifically challenged the sufficiency of the evidence supporting his first degree murder conviction, we will nonetheless independently review the evidence pursuant to the standard established in *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 454 A.2d 937 (1982). When viewed in the light most favorable to the Commonwealth as verdict winner, the evidence and all reasonable inferences from that evidence must support the jury's finding of guilt beyond a reasonable doubt. *Commonwealth v. Rhodes,* 510 Pa. 537, 510 A.2d 1217 (1986).

■ Evidence is sufficient to sustain a conviction for first degree murder when the Commonwealth establishes the defendant acted with specific intent to kill; that a human being was unlawfully killed; that the person accused did the killing; and that the killing was done with deliberation. 18 Pa.C.S.

§ 2502(d); *Commonwealth v. Mitchell,* 528 Pa. 546, 550, 599 A.2d 624, 626 (1991). A specific intent to kill can be inferred by the use of a deadly weapon upon a vital part of the victim's body. *Commonwealth v. Butler,* 446 Pa. 374, 288 A.2d 800 (1972). Here, the medical examiner's testimony, Gore's eyewitness testimony, co-defendants' statements and Miles' admissions establish that Miles shot a .38 caliber bullet from a .357 Magnum that pierced Demby's heart and killed him.

Furthermore, the similar statements by Miles, Kinard and Henry clearly support the verdict in this case. All three defendants admitted in their statements that they were at the shopping center outside of Jean's World on March 17, 1990. The three defendants agreed that Miles and Henry were armed with a .357 Magnum and a .22 caliber pistol and that both Miles and Henry fired their handguns. Finally, all three defendants agreed that Demby's sneaker bag was stolen.

Gore's eyewitness testimony also clearly supports the jury's verdict in this case. Gore identified the three defendants as his attackers. He also testified that he saw both Henry and Miles shoot their handguns.

Additionally, Charles Williams testified that he gave Miles a .357 Magnum early in the day on March 17, 1990, because Miles claimed that someone had tried to rob him. Williams met Miles late in the evening on March 17, 1993 and purchased Demby's sneakers from Miles. Williams also testified that Miles admitted he had shot someone at the shopping center.

Finally, Darryl Bryant testified that he saw Williams give Miles a .357 Magnum on March 17, 1990. Bryant also testified that he saw Miles use the .357 Magnum to rob a young boy hours before Demby's murder. After a review of the record, we find that the evidence is sufficient to support Miles' conviction for first degree murder.

### Issues 1 and 2: Violation of Miles' Bruton Rights

We consider Miles' first and second issues together. First, Miles argues that the redaction of his name from his co-

defendants' statements was not sufficient to protect him from undue prejudice. Miles contends that despite the redaction, the co-defendants' statements remained powerfully incriminating, thus violating his right to confrontation as set forth in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). In *Bruton,* the U.S. Supreme Court held that the introduction of a non-testifying co-defendant's incriminating statement that implicates another defendant deprives that defendant of his Confrontation Clause rights. Thus, in *Commonwealth v. Johnson,* 474 Pa. 410, 378 A.2d 859 (1977), we held that the Commonwealth could introduce the redacted statement of a co-defendant as evidence in a joint trial only if that statement in no way refers to the other defendant.

All three co-defendants in this case gave similar inculpatory statements to the police. Henry and Kinard waived their rights to have their respective co-defendants' statements redacted. Miles, however, chose to have his name redacted from Henry's and Kinard's statements. The trial court then ordered the substitution of Miles' name with the letter "X" in both statements, which were subsequently introduced into evidence.

In *Commonwealth v. Lee,* 541 Pa. 260, 662 A.2d 645 (1995), the defendant argued that although his name was replaced with an "X" in his co-defendant's statement, when the statement was read in the context of the Commonwealth's other evidence, it was clear that Lee was "X". This Court held that replacing any specific reference to the defendant from a co-defendant's statement using an "X" can protect the defendant's rights if a proper limiting instruction is given. *Lee.*

Besides redacting the co-defendants' statements, the trial court cautioned the jury during the trial that each statement should only be evaluated as evidence against the defendant making the statement. The trial court repeated that instruction in its charge to the jury. Thus, the trial court complied with *Johnson* and *Lee* and this claim fails.

■ Second, Miles argues that the trial court erred in denying his Motion to Sever the trials of the three co-

defendants. Miles restates his argument that he was prejudiced because his co-defendants' statements were redacted using an "X" and the jury could not have failed to understand that the letter "X" in the co-defendants' statements represented Miles. However, as already discussed, the substitution of the letter "X" for a defendant's name does not violate that defendant's *Bruton* rights if a proper limiting instruction is given, as it was in this case. *Lee.* Thus, because Miles has failed to demonstrate how being tried with co-defendants unduly prejudiced him, this claim fails.

## *Issue 3: Prosecutorial Misconduct*

Miles contends the prosecutor made improper comments on four occasions during his closing remarks, which deprived Miles of a fair trial. In reviewing the prosecutor's comments, we note that a prosecutor "must be free to present his or her arguments with logical force and vigor." *Commonwealth v. Smith,* 490 Pa. 380, 387, 416 A.2d 986, 989 (1980). Reversible error only exists if the prosecutor has "deliberately attempted to destroy the objectivity of the fact finder" such that the "unavoidable effect" of the inappropriate comments would be to create such bias and hostility toward the defendant that the jury could not render a true verdict. *Commonwealth v. Carpenter,* 511 Pa. 429, 439, 515 A.2d 531, 536 (1986). This is a decision for the trial court that will not be disturbed absent an abuse of discretion. *Commonwealth v. Van Cliff,* 483 Pa. 576, 397 A.2d 1173 (1979). We now review the allegedly improper comments.

First, Miles alleges the prosecutor violated his *Bruton* rights during closing arguments by inadvertently reading his nickname "Yattie" in Kinard's statement. Throughout the trial, witnesses and counsel repeatedly referred to Miles using his nickname "Yattie". Thus, the jury was aware that "Yattie" is Miles' nickname. Miles specifically argues that this redaction error prejudiced him because the prosecutor, by reading Miles' nickname, used Kinard's statement to incrimi-

nate Miles.[8]  *Commonwealth v. Rawls,* 276 Pa.Super. 89, 419 A.2d 109 (1980).

In *Rawls,* the only case Miles relies upon, the prosecutor, during closing arguments, read from a co-defendant's redacted statement in order to corroborate the evidence in the defendant's confession.  The Superior Court held that it was error for the prosecutor to refer to the co-defendant's redacted confession as evidence against the non-confessing defendant.  *Id.* However, the Superior Court held a new trial was not warranted because the trial court appropriately instructed the jury that the statement was to be considered only against the defendant who made the statement.  *Id.* Miles contends that the error in this case cannot be so easily dismissed because the Commonwealth improperly redacted the statement and the trial court made no special efforts to protect the jury from using Kinard's statements against Miles.

However, in *Commonwealth v. Wharton,* 530 Pa. 127, 607 A.2d 710 (1992), we adopted the reasoning of the U.S. Supreme Court's in *Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972).  We held that the

'mere finding of a violation of the Bruton rule in the course of the trial, however, does not automatically require reversal of the ensuing criminal conviction.  In some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error.'

*Wharton,* 530 Pa. at 143–44, 607 A.2d at 718 quoting *Schneble, supra* at 430, 92 S.Ct. at 1059.  Here, the inadvertent use of Miles' nickname was a violation of the *Bruton* rule.  However, considering the overwhelming evidence of Miles' guilt, including his confession and eyewitness testimony, it is clear beyond a reasonable doubt that the error is harmless.  *Id.* Further-

**8.** Although Miles' counsel did not object to the prosecutor's use of "Yattie" in closing arguments, because this is a death penalty case, we will consider the issue under the relaxed waiver rule from *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 454 A.2d 937 (1982).

more, as in *Wharton*, the trial court cautioned the jury to only consider the statement against the statement's maker. *Id.* Accordingly, this claim fails.

■ Second, Miles objects to the prosecutor's description of one of co-defendant Kinard's character witnesses, Jack McMahon. McMahon met Kinard when he was the Assistant District Attorney for a homicide trial in which Kinard was a witness for the Commonwealth. Subsequently, McMahon established a private criminal defense practice. The prosecutor here stated that McMahon was someone "who makes his living defending criminals". Notes of Testimony, February 19, 1992 at 113. Miles argues that the prosecutor was implying that all defense counsel, including Miles' counsel, defend criminals and therefore Miles, whom a criminal defense attorney represented, is a criminal. Thus, Miles contends that this statement stigmatized both Miles and his attorney and constituted reversible error.

■ A prosecutor must argue only those inferences that reasonably derive from the evidence of the trial. *Commonwealth v. Johnson*, 516 Pa. 527, 533 A.2d 994 (1987). Here, Mr. McMahon testified that he was a criminal defense attorney. N.T. 2–13–92 at 33. Thus, the prosecutor's remark, although intemperate, was a reasonable inference from the evidence presented at trial and was not so unduly prejudicial as to require a new trial.

■ Third, Miles contends the prosecutor's comparison of the conduct of the three defendants to the hunting style of animals of prey violated his right to a fair trial. Specifically, the prosecutor noted that one defendant grabbed Demby's sneakers while a conspirator shot at Demby and the third defendant struggled with Demby's friend. The prosecutor described this cooperation to the jury as follows:

[D]id you ever see those nature shows, the nature shows where they show animals of prey? ... you see them chasing a de[e]r [sic], innocent animal, a[n] animal which serves as their prey. They rarely do it alone. Rarely does one attack by itself. There's one that jumps up and snaps the neck of

the de[e]r with one bite and another one that jumps up and tears the flesh of the slain off with one bite. They all can join together. They snip and tug and bite and snap until they get what they're after. They all share. They all act together. That's what you saw here.

N.T. 2–19–92 at 124.

Our Court has held that as long as there is a reasonable basis in the record for the comments, we will permit vigorous prosecutorial advocacy. For example, in *Commonwealth v. Jones*, 530 Pa. 591, 617, 610 A.2d 931, 943 (1992) we upheld a prosecutor's comments that defendants were a "murdering, child-killing, backshooting" trio, "slaughterers" and "executioners" because the comments were reasonably based upon the evidence produced at trial. Further, we will only reverse the trial court if the unavoidable effect of the prosecutor's comments is to create hostility against the defendant such that the jury is hindered in its job of objectively weighing the evidence. *Commonwealth v. Hill*, 542 Pa. 291, 666 A.2d 642 (1995). The prosecutor's comments in this case were reasonably based upon the record that the defendants acted in concert when attacking Demby and Gore. Here we find that the prosecutor's comments could not have prejudiced the jury to the point of thwarting their objectivity.[9]

However, Miles cites our holding in *Commonwealth v. Lipscomb*, 455 Pa. 525, 317 A.2d 205 (1974) to support his argument that the prosecutor's comments constitute reversible error. In *Lipscomb*, we granted the defendant a new trial because the prosecutor improperly concocted testimony from the deceased victim. The prosecutor said,

9. Miles also relies on the Superior Court's decision in *Commonwealth v. Scarfo*, 416 Pa.Super. 329, 611 A.2d 242 (1992), alloc. denied, 535 Pa. 633, 631 A.2d 1006 (1993), to support his contention that the prosecutor's remarks deprived him of a fair trial. In *Scarfo*, the two-judge majority granted the defendant a new trial based on prosecutorial misconduct. In responding to defense counsel's statement that the Commonwealth's witnesses were "ravening wolves", the Prosecutor analogized the defendants to wolves hunting in a wolfpack. However, we are not bound by the Superior Court and we find its reasoning unpersuasive in the instant case.

You know, my best witness isn't here today. But if he could come back, if Mr. Sweeney could come back and sit in this chair and face you, the jurors, I believe he would say, 'I didn't want to die. . . . I didn't know this would be my last walk. I didn't know that a bunch of hoodlums and animals would pounce upon me and tear me apart'.

*Lipscomb,* 455 Pa. at 527, 317 A.2d at 206. We held the prosecutor improperly injected his personal opinion in the closing argument by stating the victim would call the defendants "hoodlums and animals". Here, the prosecutor did not similarly reveal his personal opinion of the defendant's guilt.

▮ Moreover, even if it may have been improper for the prosecutor to analogize the actions of defendants here to the hunting behavior of animals of prey, we have held "not every intemperate or uncalled for remark by a prosecutor requires a new trial." *Commonwealth v. D'Amato,* 514 Pa. 471, 490, 526 A.2d 300, 309 (1987). Sometimes, prosecutorial misconduct may be harmless error if the prosecutor demonstrates that the error was harmless beyond a reasonable doubt. *Commonwealth v. Collins,* 462 Pa. 495, 341 A.2d 492 (1975). We have held that where "the properly admitted evidence of guilt is so overwhelming and the prejudicial effect of the error is so insignificant by comparison that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict", then the error is harmless beyond a reasonable doubt. *Commonwealth v. Story,* 476 Pa. 391, 412, 383 A.2d 155, 166 (1978).

In the case at bar, the properly admitted evidence of Miles' guilt, including his confession, his co-defendants' statements and eyewitness testimony, is overwhelming. The effect of the prosecutor's analogy in the closing argument is insignificant in comparison. Thus, the error was harmless beyond a reasonable doubt. Accordingly, we should not grant a new trial.

▮ Fourth, Miles alleges that the prosecutor improperly asked the jury to find him guilty out of sympathy for the victim's mother. However, the record reveals that the prosecutor stated the exact opposite; "I cannot ask you to feel the

grief of a mother who has no son.... But I can ask you, and the evidence directs you, your oath demands that you feel during your duty one emotion that Chris' mother feels, that is a desire for justice." N.T. 2–19–92 at 129–30. We find no undue prejudice where the prosecutor properly informed the jury of its duty not to be swayed by sympathy or empathy. *See Commonwealth v. Travaglia*, 502 Pa. 474, 467 A.2d 288 (1983).

Finally, Miles asserts that he is entitled to relief based on the cumulative effect of the prosecutor's conduct. We have held that if the prosecutor has engaged in a pattern of misconduct throughout the trial then there is reason to grant a new trial. *Commonwealth v. Bricker*, 506 Pa. 571, 487 A.2d 346 (1985). Here, Miles accuses the prosecutor of four instances of misconduct during closing arguments. As discussed above, we find the prosecutor's conduct to have been proper in each of those four instances. Furthermore, we have held that "[n]o number of *failed* claims may collectively attain merit if they could not do so individually." *Commonwealth v. Williams*, 532 Pa. 265, 278, 615 A.2d 716, 722 (1992). Thus, Miles is not entitled to a new trial.

## Issue 4: Jury Instructions

Miles claims that the trial court committed reversible error when it used his name in instructing the jury on murder in the second degree, thereby indicating to the jury the trial judge's opinion that Miles shot Demby.[10] *Commonwealth v. McNeill*, 462 Pa. 438, 341 A.2d 463 (1975). A trial court's error in jury instructions constitutes reversible error

---

10. The trial judge stated in part:

> You may find the defendants guilty of second degree murder, this is felony murder, if you are satisfied the following elements have been proven beyond a reasonable doubt.
>
> First, that **Kenyatta Miles** killed or caused the death of Christopher Demby. And second that the defendant did so while he and the defendants were partners in committing a certain robbery.
>
> Third, that **Kenyatta Miles** did the act, that is caused the death or the killing of Christopher Demby in furtherance of the robbery or in a robbery attempt. (emphasis added).

Notes of testimony, February 19, 1992, p. 159–160 (emphasis added).

only when there is an abuse of discretion or an inaccurate statement of law. *Commonwealth v. Jones,* 542 Pa. 464, 668 A.2d 491 (1995). Jury instructions must be taken as a whole and an error cannot be predicated on an isolated excerpt. *Zettlemoyer, supra.*

Here, the trial court, upon being advised of this error, conceded that it had made an inadvertent mistake and immediately issued a curative instruction.[11] Because the trial court only made this isolated mistake in the jury instructions and immediately issued a curative instruction, the prejudice to the defendant was *de minimis* and the error was harmless beyond a reasonable doubt. *See Commonwealth v. Foy,* 531 Pa. 322, 612 A.2d 1349 (1992).

## *Issue 5: Suppression of Miles' Statement*

Miles next asserts the trial court erred in denying his Motion to Suppress his statement based on the police's failure to readminister his *Miranda* rights after a break in his interview.[12] The Commonwealth's uncontroverted evidence belies this claim. The record reveals that on April 4, 1990, at 2:35 p.m., Sergeant Descher read Miles his *Miranda* rights in a room at the Police Administration Building. Miles then gave a statement to Detective Jastrzembski until approximately 4:00 p.m. At 5:30 p.m., Detective Dougherty entered the room, reminded Miles of his *Miranda* rights and asked Miles if he had read and understood his rights. Miles then gave a second statement. Although Miles argues that police failed to administer *Miranda* warnings after an extended break in interrogation, the Commonwealth provided uncontradicted evidence that Detective Dougherty advised Miles of his rights at

**11.** The trial judge stated: "Ladies and gentlemen of the jury, ... in my earlier charge defining second degree murder I inadvertently used Kenyatta Miles' name. That was in error. I will take that out and take that away from your consideration and redefine second degree murder for you once again." Notes of Testimony, February 19, 1992, p. 191–196.

**12.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

the time Miles made his second statement to police. Thus, the trial court did not err in refusing to suppress Miles' statement.

### Issue 6: Prior Crimes Evidence

Miles asserts that the trial court erred by admitting Darryl Bryant's testimony that Miles committed an armed robbery hours before Demby's murder. The admission of prior bad acts is within the discretion of the trial court and will only be reversed upon a showing of abuse of discretion. *Commonwealth v. Simmons*, 541 Pa. 211, 662 A.2d 621 (1995). Here, the record reveals that Bryant testified that Miles used a .357 Magnum to steal a gold chain from a young boy hours before Demby's murder. The trial court overruled the defense's objection to the admission of this evidence. However, the next day, prior to the taking of testimony, the court reversed itself, *sua sponte*. At sidebar, the trial court sustained the defense's objection and offered to give an instruction advising the jury to ignore Bryant's testimony referring to the robbery. The defense refused the offer of a curative jury instruction and therefore the court did not caution the jury.

Despite the trial court's subsequent decision to sustain the defense's objection, we find no error in the trial court's initial admission of this evidence. Generally, evidence of prior crimes is inadmissible because it is so inflammatory and prejudicial that it deprives a defendant of a fair trial. *Commonwealth v. Nichols*, 485 Pa. 1, 400 A.2d 1281 (1979). However, prior crimes evidence is admissible to prove motive, intent, absence of mistake or accident, common scheme, plan or design or identity. *Commonwealth v. Sneeringer*, 447 Pa.Super. 241, 668 A.2d 1167 (1995).

Prior crimes evidence that forms part of the chain or sequence of events leading to a crime and enhances the natural development of the facts is admissible. *Commonwealth v. Lark*, 518 Pa. 290, 543 A.2d 491 (1988). For example, in *Commonwealth v. Nolen*, 535 Pa. 77, 634 A.2d 192 (1993), we upheld the trial court's admission of evidence of two

burglaries that occurred approximately a week before the murder being tried. We held the evidence was probative because guns that matched the murder weapons had been stolen in the burglaries. Similarly here, the evidence of Miles' robbery of a young boy using a .357 Magnum hours before Demby's murder was probative of Miles' possession of such a weapon at the time of Demby's murder. Also, a jury instruction would have cured any prejudice caused by the admission of the robbery, but defense counsel refused the judge's offer to give an instruction for strategic reasons. Thus, the trial court did not abuse its discretion in admitting this evidence.

## IV. REVIEW OF SENTENCE

This Court has a duty to affirm the sentence of death unless we determine that:

(i) the sentence of death was the product of passion, prejudice or any other arbitrary factor;

(ii) the evidence fails to support the finding of at least one aggravating circumstance specified in subsection (d); or

(iii) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant.

42 Pa.C.S. § 9711(h)(3). After reviewing the record, we first conclude that the sentence imposed was not the product of passion, prejudice or any other arbitrary factor.

■■■ Second, we examine whether the Commonwealth established beyond a reasonable doubt the four aggravating factors found by the jury. First, the Commonwealth presented evidence that a jury convicted Miles of Second Degree Murder and sentenced him to life imprisonment in an unrelated case on October 7, 1991. With this evidence, the Commonwealth established both that Miles had been convicted of another federal or state offense for which the court could impose a sentence of life imprisonment and that he had been

convicted of another murder before the time of the offense at issue. 42 Pa.C.S. 9711(d)(10) and (11).

The Commonwealth also produced evidence that Miles committed the murder while robbing Demby. Witnesses testified that Miles grabbed the murder victim's sneaker bag, brought the sneakers back to his neighborhood and then sold them to a friend. This evidence supports the jury's finding that Miles killed Demby while in the perpetration of the felony of robbery. 42 Pa.C.S. 9711(d)(6).

Further, the Commonwealth presented evidence from an eyewitness and the co-defendants, which established that Miles fired his .357 Magnum in a fight with four other people at a public shopping center. This evidence supports the fourth aggravating circumstance found by the jury, that Miles created a risk of death to another person other than the victim. 42 Pa.C.S. 9711(d)(7). Thus, we find that the Commonwealth's evidence supported all four aggravating circumstances beyond a reasonable doubt.

Third, we have reviewed the sentencing data compiled by the Administrative Office of the Pennsylvania Courts concerning similar cases and conclude that the sentence of death imposed upon appellant is not disproportionate. 42 Pa.C.S. 9711(h)(2); *Zettlemoyer, supra.*

Accordingly, we affirm the verdict and the sentence of death imposed upon Kenyatta Miles by the Court of Common Pleas of Philadelphia County.[13]

---

13. The Prothonotary of the Supreme Court is hereby directed to transmit, within 90 days, the complete record of the case sub judice, including the record of trial, sentencing hearing, imposition of sentence and review by this Court, to the Governor of Pennsylvania. 42 Pa.C.S. § 9711(i).