J-S56023-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| YAQUAN GERALD WILLIAMS | |
| Appellant | No. 796 MDA 2015 |

Appeal from the PCRA Order April 9, 2015
in the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-CR-0001092-2009

BEFORE:  SHOGAN, J., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY JENKINS, J.:                **FILED NOVEMBER 02, 2015**

Yaquan Gerald Williams ("Appellant"), appeals from the order dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  After careful review, we affirm.

On September 21, 2010, a jury found Appellant guilty of murder in the first degree,[1] firearms not to be carried without a license,[2] and delivery of a controlled substance – cocaine.[3]  On September 30, 2010, the trial court sentenced Appellant to life imprisonment for the murder conviction, and

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2501(a).

[2] 18 Pa.C.S. § 6106(a)(1).

[3] 35 P.S. § 780-113(a)(30).

consecutive sentences of 1 to 2 years' incarceration for the firearms not to be carried without a license conviction and 2 to 4 years' incarceration on the delivery of a controlled substance conviction. Appellant appealed. This Court affirmed the judgment of sentence on August 2, 2011,[4] and the Supreme Court of Pennsylvania denied Appellant's petition for allowance of appeal on January 19, 2012.

On October 5, 2012, Appellant filed the instant timely PCRA petition. The PCRA court held evidentiary hearings on August 12, 2014 and October 9, 2014, and denied the PCRA petition on April 9, 2015. Appellant timely appealed on May 7, 2015. Also on May 7, 2015, the PCRA court filed a Pa.R.A.P. 1925(a) opinion that adopted the April 9, 2015 order as the court's 1925(a) opinion.[5]

Appellant raises the following issues for our review:[6]

> I. [Whether] Appellant was denied his rights under Article 1 § 9 [of] the Constitution of Pennsylvania and the Sixth Amendment to the Constitution of America to effective assistance of counsel in that trial counsel failed to investigate, interview and call to testify at trial an eyewitness to the crime[?]

---

[4] *See Commonwealth v. Williams*, 1664 MDA 2010, August 2, 2011 (unpublished memorandum).

[5] The PCRA court did not order, and Appellant did not file, a statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b).

[6] We note that, with the exception of the additional seventh issue alleging Appellant was prejudiced by the cumulative effect of prior counsel's ineffectiveness, these claims mirror exactly Appellant's claims raised in his PCRA petition.

II. [Whether c]ounsel was constitutionally ineffective under the Sixth Amendment for eliciting prejudicial testimony from a detective about the detective's personal opinion of the truthfulness of another witness' testimony. In that the detective[']s opinion of the witness' credibility supplanted the fact finder's determination, [Appellant's] Fourteenth Amendment rights were violated[?]

III. [Whether d]irect appeal[] counsel was constitutionally ineffective under the Sixth Amendment for raising a claim challenging the trial court's denial of the motions to suppress and then failing to brief said issue, thereby waiving it[?]

IV. [Whether c]ounsel was constitutionally ineffective under the Sixth Amendment for failing to preserve and properly argue a hearsay objection to testimony that Ms. Aguilera called people and told them that Ms. Johnson was [a] snitch[?]

V. [Whether c]ounsel was constitutionally ineffective under the Sixth Amendment for opening the door to prejudicial testimony from a Commonwealth witness[?]

VI. [Whether c]ounsel was constitutionally ineffective under the Sixth Amendment for failing to object [to] questions to an eyewitness that confused and misle[]d the jury concerning the reliability of the witness' identification of the perpetrator[?]

VII. [Whether t]he [c]umulative [i]mpact of [c]ounsel's ineffectiveness entitles Appellant to relief[?]

Appellant's Brief, pp. 2-3.

Our standard of review from the denial of post-conviction relief "is limited to examining whether the court's determination is supported by the evidence of record and whether it is free of legal error." ***Commonwealth v. Ousley***, 21 A.3d 1238 (Pa.Super.2011) (citing ***Commonwealth v. Morales***, 701 A.2d 516, 520 (Pa.1997)).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Dennis E.

Reinaker, we conclude Appellant's issues merit no relief. The PCRA court opinion comprehensively discusses and properly disposes of the questions presented. **See** PCRA Court Opinion and Order, dated April 9, 2015, pp. 2-13 (finding: (1) trial counsel was not ineffective for failing to call eyewitness where Appellant failed to prove proposed witness's willingness to testify at trial, or that absence of such testimony prejudiced Appellant where court found witness's testimony at PCRA hearing incredible; (2) trial counsel was not ineffective for eliciting testimony from detective regarding his personal opinion as to truthfulness of another witness where detective commented on witness's truthfulness at time of interview, not trial, trial counsel had strategic reason for not objecting to detective's testimony, and trial court properly instructed jury regarding detective's testimony; (3) appellate counsel was not ineffective for raising but failing to brief meritless suppression issue on direct appeal; (4) trial counsel was not ineffective for failing to object to alleged hearsay testimony where trial court had ruled pre-trial that testimony would be admissible; (5) trial counsel was not ineffective for opening door to prejudicial testimony of Commonwealth witness where questioning was strategically reasonable to support defense contention police determined Appellant was the shooter and then attempted to garner evidence to support their theory of the crime; (6) trial counsel was not ineffective for failing to object to certain questions posed to eyewitness where counsel objected, trial court instructed prosecutor to rephrase question, prosecutor did rephrase question, and Appellant failed to prove

- 4 -

prejudice from counsel's failure to further object).  Accordingly, we affirm on the basis of the PCRA court's opinion.

Order affirmed.

Judge Shogan joins in the memorandum.

Judge Platt concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/2/2015

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CRIMINAL

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | |
| | : | |
| v. | : | No. 1092-2009 |
| | : | |
| | : | |
| YAQUAN GERALD WILLIAMS | : | |

2015 APR -9 PM 2:52
LANCASTER COUNTY, PA
CLERK OF COURTS

## OPINION AND ORDER

BY: REINAKER, J.
April 9, 2015

The Defendant, Yaquan Gerald Williams, has filed an Amended Motion for Post-Conviction Collateral Relief. The Defendant argues that he is entitled to post conviction relief on six grounds: (1) his Trial Counsel provided ineffective assistance of counsel for failing to investigate, interview and call to testify at trial an eyewitness to the crime; (2) Trial Counsel was ineffective when he elicited testimony from a detective about the detective's personal opinion of the truthfulness of another witness' testimony; (3) his Trial Counsel provided ineffective assistance of counsel when he failed to raise a hearsay objection to the detective's testimony regarding what the victim told the detective; (4) his Trial Counsel provided ineffective assistance of counsel when he opened the door to prejudicial testimony from a Commonwealth witness; (5) Trial Counsel provided ineffective assistance of counsel for failing to object to the Commonwealth's questioning during cross-examination of an eyewitness that confused and mislead the jury; and (6) Appellate Counsel was ineffective for waiving a claim that challenged the Trial Court's denial of a motion to suppress. The Court finds that the Defendant's Amended Motion for Post-Conviction Collateral Relief will be Denied.

## Procedural and Factual Background

On September 21, 2010 a jury found the Defendant guilty of one count of criminal homicide – murder in the first degree,[1] one count of firearms not to be carried without a license,[2] and one count of delivery of cocaine.[3] On September 30, 2010, he was sentenced to life imprisonment without the possibility of parole for murder in the first degree, not less than one (1) no more than two (2) years incarceration for possession of firearms, and not less than two (2) nor more than four (4) years incarceration for delivery of a controlled substance, which were to be served consecutively with his life imprisonment for murder charge.

On February 3, 2011 the Defendant, through Appellate Counsel, filed an appeal to the Superior Court of Pennsylvania. The Superior Court affirmed the judgment of sentence on August 2, 2011. On August 10, 2011 the Defendant next filed a Petition for Allowance of Appeal with the Supreme Court of Pennsylvania which was denied on January 19, 2012.

The Defendant filed a timely Motion for Post-Conviction Collateral Relief on October 5, 2012 and the PCRA Court held evidentiary hearings on August 12, 2014 and October 9, 2014. At the conclusion of the hearings, the Court ordered both parties to file briefs. Both parties have submitted their briefs, and the matter is ready for decision.

## Discussion

In his motion, the Defendant raises claims of ineffective assistance of counsel. The following standards apply to the determination of ineffectiveness issues.

---

[1] 18 Pa.C.S.A. §2501(a).
[2] 18 Pa.C.S.A. §6106(a)(1).
[3] 35 P.S. §780-113(a)(30).

2

The law presumes that counsel was effective and the Defendant has the burden of proving ineffectiveness. Commonwealth v. Brooks, 839 A.2d 245, 248 (Pa. 2003). Therefore, to prevail on an ineffectiveness claim, the Defendant must demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel's performance lacked a reasonable basis; and (3) counsel's performance caused him prejudice. Commonwealth v. Miller, 746 A.2d 592 (Pa. 2000). The Defendant must establish that there was a resulting prejudice regardless if his claim satisfies the first two requirements of the ineffective assistance standard. Commonwealth v. Neal, 713 A.2d 657, 662 (Pa.Super.Ct. 1998). Additionally, to be eligible for relief, the petitioner must both plead and prove his case. 42 Pa.C.S.A. §9543(a). Where matters of strategy and tactics are concerned, counsel's assistance is generally deemed constitutionally effective if the course chosen had some reasonable basis designed to effectuate the defendant's interest. Commonwealth v. Miller, 819 A.2d 504, 517 (Pa.2002). Such a claim cannot succeed through a hindsight comparison of the chosen strategy and other alternatives. Id.

1. The Defendant's assertion that his Trial Counsel provided ineffective assistance of counsel for failure to call eyewitness is meritless.

The Defendant's first ineffective assistance of counsel claim addresses his Trial Counsel's failure to call an eyewitness to the incident as a witness at trial. Specifically, Trial Counsel failed to call Keenan Woods as a witness. In order to prove a claim of ineffective assistance for failure to call a witness, the Court in Commonwealth v. Sneed, 45 A.3d 1096, 1108-09 (Pa. 2012) established that the petitioner must prove:

"(1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was

3

willing to testify for the defense; and (5) the absence of trial testimony of the witness was so prejudicial as to have denied the defendant a fair trial..."

Here, the Defendant was able to satisfy the first two elements because Mr. Woods existed as a witness and Trial Counsel knew of the witness. The Defendant did not prove that the witness was also willing to testify for the defense and that the absence of the witness' testimony caused prejudice to the Defendant and denied him a fair trial. The Court finds that the witness was not credible based on the testimony provided during the PCRA hearing. During the hearing, the witness testified that he spoke with Detective Nickel during an interview a week after the murder. (Notes of Testimony from PCRA (hereinafter "N.T.PCRA" at 13-14)). Later the witness testified that he wrote a letter to his attorney in which he stated he did not know who the shooter was and attempted to contact Detective Nickel to explain that he could provide a description but not the shooter's identity. (N.T.PCRA at 20-21). Then the witness testified that on October 4, 2011, two years after the murder, he wrote a notarized declaration, in which he provided a detailed description of the shooter. (See Commonwealth Exhibit #1, N.T.PCRA 22-24). In addition, the witness stated that two days after speaking with the Detective, he recognized who shot the victim and it was not the Defendant. (N.T.PCRA 14-16, 24-25).

The witness's testimony is not credible because the witness was scheduled to testify for the Commonwealth and against the Defendant at trial. Prior to trial, the witness discussed with the Assistant District Attorney the general description of the shooter and never mentioned that he did not think it was the Defendant. (N.T.PCRA 34). However, during the PCRA hearing the witness testified that he realized who the real shooter was two days after speaking with the Detective. (N.T.PCRA 24-25). The witness also testified that he wrote a letter to his attorney and stated that he attempted to call the police to inform them that someone else was the shooter.

4

(N.T.PCRA 30). Detective testified that he never received a call and would have called him back if he left him a voicemail. (N.T.PCRA 94). The Detective further testified that he met with the witness on June 6, 2014 and reviewed the witness's statement that he gave on February 3, 2009 and at this recent meeting, the witness agreed with his previous statements. The witness's testimony was also not credible when he stated that he tried to contact the Detective to clarify his statement but later stated during cross-examination that he did not attempt to contact the police to tell them they arrested the wrong person. (N.T.PCRA 16, 30). In addition, the witness failed to explain why he decided to make a notarized statement two years after the trial. (N.T.PCRA 31-33).

Next, the Defendant did not prove that the witness was willing to testify for the defense because during the PCRA hearing the witness only stated that he would have testified for the defense if they had called him but the witness was also planning on testifying for the Commonwealth. The Defendant also fails to prove how the absence of the witness's testimony was so prejudicial that the defendant was denied a fair trial. Since the witness was not able to identify a shooter as a specific person, but would have provided general descriptions of the shooter, the witness's testimony would actually have been supported at trial by other eyewitnesses who gave similar descriptions of the shooter. Since the rest of Mr. Woods' testimony is not credible, the Defendant fails to prove how he was prejudiced.

It is a credible strategic decision for the Trial Counsel to make the decision not to have the witness testify. Trial Counsel testified that he did interview the witness and chose not to call him as a witness. (N.T. PCRA 47,50). Trial Counsel also stated that it was his typical practice to look into potential witnesses if a client provides their name. (N.T.PCRA 57). Therefore, this claim is without merit.

5

2. The Defendant's claim for ineffective assistance of counsel after his Trial Counsel elicited testimony from the Detective is meritless.

The Defendant's next claim addresses his Trial Counsel's ineffective assistance of counsel for eliciting testimony from Detective Nickel that the Detective believed Mr. Pinnock was telling the truth while giving his statement to the police. The claim is meritless since Detective Nickel was commenting on the witness' truthfulness during the time of police questioning, not the witness' truthfulness at the trial. The jury had the ability to determine the credibility of Mr. Pinnock when he provided his testimony at trial and not rely on the Detective's opinion.

In addition, the Defendant fails to prove that Trial Counsel lacked reasonable basis for his decision to not object and that the failure to object caused the Defendant prejudice. The Defendant's Trial Counsel testified during the PCRA hearing that "if the jury seems to think you're trying to keep something out of evidence, then the jury may believe the evidence is helpful to the Commonwealth." (N.T.PCRA at 54-55). The jury also received appropriate instructions on how to assess the credibility of a witness during the jury instructions. The instructions specifically explained that the jury should not merely believe a law enforcement officer's testimony because of his position and it should be evaluated the same way as every other witness's testimony. (See N.T.T. 981-83). Therefore, the claim is meritless.

3. Defendant's claim that his Appeal Counsel was ineffective for failing to raise a claim and brief the issue is meritless.

The Defendant asserts that his Appeals Counsel failed to file an appeal after the Trial Court denied the Defense's Motion to Suppress Evidence. The Defendant's Trial Counsel filed an

6

Amended Motion to Suppress on October 9, 2009 to challenge the legality of the vehicle stop of the Defendant. The Defendant's Appellate Counsel raised the issue that the Trial Court erred in denying the Suppression Motion but failed to brief the issue and it was therefore waived.

The Defendant failed to prove that the claim has arguable merit and his Appellate Counsel provided ineffective assistance of counsel. During the Suppression Hearing Sergeant Jarrad Berkihiser provided testimony that he had reasonable suspicion to stop the Defendant and also had probable cause to arrest the Defendant. (Notes of Suppression Hearing, hereinafter "N.S.H." at 7-14). The Sergeant had reasonable suspicion to stop the Defendant after he arrived on the scene of the incident and then left in order to search for the Defendant, who was identified by the victim and the police were aware that the victim was an informant. (N.S.H. 7-14). The Defendant was found four blocks away from the location of the incident. (N.S.H. 14-15). In addition, the Sergeant was informed by fellow officers that the Defendant used a black Honda with Delaware registration plates and was frequently in the area and the Defendant was in fact found four blocks away from the location of the incident an hour after the incident occurred. (N.S.H. 14-15, 17-18).

These facts satisfy the officer's need to "point to specific and articulable facts and reasonable inferences drawn from those facts in light of the officer's experience" in determining whether the officer had reasonable suspicion. (Commonwealth v. Cook, 735 A.2d 673, 677 (Pa. 1999) (citing Commonwealth v. Jackson, 698 A.2d 571, 573 (Pa. 1997)). The Sergeant also testified that he witnessed two motor vehicle code violations, which provide reasonable suspicion and proper custodial detention. (N.S.H. 34-38). However, the Sergeant also had reasonable suspicion to stop the Defendant as part of an investigative detention.

The Defendant also raised the issue of whether there was sufficient probable cause in the search warrant for the search of the black Honda. The search was not a search incident to arrest as the Defendant asserts, but rather was the result of a search warrant.

During the PCRA hearing, Appellate Counsel testified that he chose not to pursue the claim because he thought it was frivolous and ridiculous and, therefore, lacked merit. (N.T.PCRA 65). Appellate Counsel's tactics were to raise only the claims that have a chance at success in order to create a stronger impression with the Superior Court regarding the validity of the case. (N.T. PCRA 65-66). Specifically, Appellate Counsel asserted that he did not raise the suppression issue because he did not "think that's effective advocacy. I think your best chance is to raise claims that have some arguable merit; give yourself a chance to be heard." (N.T.PCRA 65). Appellate Counsel continued to explain that "I think it's a stronger presentation to raise something that has some chance of success on appeal." (N.T.PCRA. 66).

The Defendant asserts that while Counsel has the ultimate decision to raise the issues on appeal, Counsel failed to discuss the reasoning behind his decision to not pursue the case with the Defendant. Therefore, the issue was waived and the Defendant was unaware of the impact of waiving the issue and his Appellate Counsel was not objectively reasonable or acting in the client's best interest. Defendant also asserted that Counsel's decisions will not be considered strategic if Counsel fails to consult with his client or the decision is unsound according to U.S. v. Narducci, 18 F.Supp.2d 481 (E.D.Pa. 1997). Narducci involves ABA Standard 4-5.2 and the Defendant asserts that a strategy will not be considered legally reasonable if the alternative course pursued by counsel does not have a significant potential for success. The Court in Narducci looks at the ABA Standard 4-5.2 and lists decisions that are made by counsel after a full consultation with the defendant and the topic of whether to appeal is on the list. However,

8

Narducci contains a second prong where the Petitioner must prove prejudice occurred as a result. 18 F.Supp.2d at 493-94. Here, the Defendant failed to demonstrate that the claim caused him prejudice. There is no indication that the outcome of the appeal would have been different based on the facts determined by the Trial Court regarding the validity of the search warrants and discovering the critical evidence of the gun that were used to convict him.

Therefore, this claim is meritless as his Appellate Counsel had a reasonable strategic basis for not pursuing the claim and the Defendant failed to show that prejudice would have occurred.

4. The Defendant's claim that Trial Counsel's failure to object to Detective's testimony is also meritless.

The Defendant's next claim addresses his Trial Counsel's failure to object to Detective Nauman's testimony, which contained possible hearsay. The Commonwealth makes note that the Defendant's heading in his PCRA discusses Counsel's failure to preserve and properly argue a hearsay objection regarding Ms. Aguilera's testimony but the body of the argument does not mention any testimony regarding Ms. Aguilera. During the Trial, Detective Nauman testified that Ms. Johnson informed him that the Defendant called her and told her that he, the Defendant, heard that she was snitching and that if she was snitching to the police, then he was going to kill her. (N.T.T. 62-63). The Defendant's Trial Counsel did not object during this testimony. The Defendant asserts that the testimony is classic hearsay under Pa.R.Evid. 801 because the Detective was repeating a statement made by Ms. Johnson in order to establish the truth of the matter asserted, that Ms. Johnson feared the defendant and she was aware that if she "snitched" she would be killed. The Defendant also stated that none of the hearsay exceptions under Pa.R.Evid. 803 and 804 apply.

9

However, the Commonwealth asserted that the matter was discussed in pre-trial motions and previously ruled upon by the Court. On March 3, 2010 the Commonwealth filed a Notice of Intent to Introduce Evidence of Other Crimes, Wrong or Acts and a hearing was held on April 19, 2010. The Commonwealth requested that evidence of Defendant's relationship and prior contact with Ms. Johnson as related by Ms. Johnson to other individuals, to show the Defendant's motive, malice, intent, knowledge, and plan. The Commonwealth asserts that it is therefore admissible as non-hearsay because it is not offered to show the truth of the matter asserted but rather to show motive, intent, state of mind, and the history of this case. This Court issued its ruling on May 24, 2010 ordering that "evidence regarding Defendant's relationship and prior contact with Mary Johnson, including testimony regarding alleged controlled substance transactions between the two as well as discussions regarding possible sales of firearms, shall be admitted at trial." Therefore, the testimony that was introduced by the Commonwealth was permitted and an objection to this testimony would lack arguable merit.

In addition, the Defendant failed to prove that Trial Counsel provided ineffective assistance of counsel by failing to object to the testimony and there was no prejudice caused because the Trial Court ensured that the testimony would be offered as proof of motive only and not the truth of the matter asserted. (N.T. 9/14/10 at 37). Therefore, the claim is meritless.

5. The Defendant's Trial Counsel was not constitutionally ineffective under the Sixth Amendment for opening the door to prejudicial testimony from a Commonwealth witness.

The Defendant asserts that his Trial Counsel provided ineffective assistance of counsel for opening the door to prejudicial testimony by Officer Halstead. During cross-examination the

10

Defendant's Trial Counsel alluded to the fact that Officer Halstead questioned Ms. Turner and only took the version of events that pleased the Officer. Trial Counsel's questioning during direct and cross-examination demonstrates that Trial Counsel had a reasonable basis for questioning the officer because he was pursuing the theory that the police determined that the Defendant was the shooter and then attempted to garner evidence to support the theory.

The Defendant also asserts that the outcome of the trial would have been different if Trial Counsel did not open the door. The Defendant believes that Trial Counsel elicited prejudicial testimony from a witness, Ms. Turner, after she testified she gave conflicting testimony because she was scared. (N.T.T. 112). However, even though it may appear that the Trial Counsel did not have a tactical reason for opening the door and attempted to withdraw the question, the testimony was not prejudicial. The Defendant was also identified by Ms. Johnson and Mr. Middleton, and he admitted to shooting Ms. Johnson to Mr. Morant and Ms. Turner. Ms. Turner herself stated that she originally told Officer Halstead a different version of the events because she was scared. (N.T.T. 580). Therefore, the testimony that Officer Halstead provided would have been brought out by Ms. Turner's testimony as well. This claim must fail because the Defendant fails to show that Trial Counsel lacked reasonable basis in bringing the claim and that it caused him prejudice.

6. Trial Counsel was not constitutionally ineffective under the Sixth Amendment for failing to object to questions to an eyewitness.

The Defendant's final claim asserts that his Trial Counsel provided ineffective assistance of counsel for failing to object to a question the Prosecution posed to Mr. Pinnock during direct examination. Mr. Pinnock provided testimony regarding who was in the area at the time of the shooting. Mr. Pinnock testified that he saw who was in the area and identified the shooter as

11

wearing dark clothing. (N.T.T. 493-95). The Defendant argues that the prosecution's question: "Of all those people, who does that person most resemble?" (N.T.T. 496-97) was objectionable. The fact that the Prosecution asked whether the Petitioner resembled the person he saw that night was not relevant or material. However, Trial Counsel objected to the question but the Court overruled the objection but directed the Prosecution to make his question more specific. (N.T.T. 497). The prosecution next asked Mr. Pinnock who the person resembled in terms of clothing and stature (N.T.T. 497). During the PCRA hearing, Trial Counsel testified that he believed that "asking an eyewitness if the defendant looks like the person who committed the crime is inherently different from asking him if this is the same person who committed the crime." (N.T. PCRA at 56). In addition, Trial Counsel did state that he didn't know if he heard the Commonwealth ask an eyewitness if the defendant resembled someone, but he probably did hear it. (N.T. PCRA 55-56).

The Court did not sustain the objection but instead directed the ADA to make his question more specific. (N.T.496-97). The ADA complied with the Court's request and asked Mr. Pinnock who the person resembled in terms of clothing, build and stature. (N.T. 497). Since the Court never sustained Trial Counsel's objection, he would not have been aware that the question was objectionable as the Defendant believes and failing to object to the more specified questions is meritless. The Defendant references Commonwealth v. Pierce, 645 A.2d 189, 197 (Pa. 1994) in support of asking who the person resembled as misleading the jury but Pierce establishes the prosecutorial misconduct for calling a sequestered witness after he sat through trial proceedings. The Defendant also references Commonwealth v. Miles, 681 A.2d 1295, 1301 (Pa. 1996), which also discusses prosecutorial misconduct but for violation of the Bruton rule, after the Commonwealth attempted to use a non-testifying co-defendant's words against a

12

defendant. The Court therefore notes that while the Defendant addresses these cases, they concern prosecutorial misconduct when the Defendant is asserting ineffective assistance of Trial Counsel for failure to object to the ADA's question.

In addition, even if the Trial Counsel was found ineffective, the Defendant fails to show how he was prejudiced by the testimony. The Defendant is unable to show if the objection had been sustained and found improper and inadmissible, the outcome of the trial would have been different. There was sufficient evidence besides the witness' testimony regarding the resemblance of the Defendant to show that the Defendant was the shooter. Two other witnesses were able to identify the Defendant as the shooter and two witnesses testified that the Defendant admitted that he shot the victim. (N.T.T Mr. Middleton 445-48, 460, Ms. Johnson 240-41, Mr. Morant 547-50, and Ms. Turner 577-79). Therefore, the claim is meritless.

Accordingly, I enter the following:

13

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CRIMINAL

COMMONWEALTH OF PENNSYLVANIA     :

          v.                :         No. 1092-2009

YAQUAN GERALD WILLIAMS       :

**ORDER**

AND NOW, this 9th day of April, 2015 after a hearing on the Amended Petition for Post-Conviction Collateral Relief filed October 5, 2012, it is hereby ordered that the petition is

DENIED.

I certify this document to be filed in the Lancaster County Office of the Clerk of the Courts.

Joshua G. Parsons
Clerk of the Courts

BY THE COURT:

/s/DENNIS REINAKER
PRES. JUDGE

DENNIS E. REINAKER
PRESIDENT JUDGE
April 9, 2015

ATTEST:

Copies to:

Amber L. Czerniakowski, Esquire
Teri B. Himebaugh, Esquire

CLERK OF COURTS
LANCASTER COUNTY, PA
2015 APR -9 PM 2: 52

14