J-A11015-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MARTEKE BURGESS | |
| Appellant | No. 45 EDA 2014 |

Appeal from the Judgment of Sentence of December 13, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at Nos.: CP-51-CR-0003078-2012,
CP-51-CR-0003214 2011, CP-51-CR-0003215-2011

BEFORE:  FORD ELLIOTT, P.J.E., OLSON, J., and WECHT, J.

CONCURRING AND DISSENTING MEMORANDUM BY WECHT, J.:

**FILED AUGUST 26, 2015**

I concur in the analyses and results reached by the learned Majority with respect to Appellant's first two issues.  However, I disagree with the ultimate result reached by the Majority regarding Appellant's challenge to the discretionary aspects of his sentence.

Respectfully, I believe it is incumbent upon us to discuss in more detail the trial court's inflammatory remarks at sentencing.  At a minimum, the issues deserve a thorough analysis, and certainly more attention than they have received from the learned Majority.  In my judgment, the trial court's language at sentencing warrants criticism, and is sufficiently filled with invective as to compel a new sentencing hearing.  Accordingly, I respectfully dissent with regard to Appellant's third issue.

Perhaps in a spirit of forbearance and generosity to the trial court, the Majority describes that court's "characterizations" of Appellant as merely "colorful." **See** Maj. Mem. at 17. In so doing, the Majority cites only one of the trial court's aspersions. **Id.** (quoting the trial court referring to Appellant as "sociopathic"). There were many more such comments by the trial judge here. Those comments were not simply "colorful." They were unnecessary, caustic, and unbecoming of a judicial officer. Each of them deserves to be reproduced by this Court in the light of day.

In the course of the sentencing proceedings, the trial court made the following remarks regarding Appellant:

- "He's never done anything right."

- "He's a complete loser at life."

- "See, here's the thing, I mean, yes, his family has destroyed him; yes, he's been in placement after placement after placement to finally when he goes AWOL. He's damaged goods. We can't fix him."

- "I disagree with you. I think he's so damaged, he can't be fixed. He doesn't even care about the situation. He laughed through the whole trial and then he goes to presentence, which is going to determine what sentence may be given to him, and he doesn't care. They call it nonchalant through the whole thing."

- "See, I don't have those goggles that I can see into his soul. I'm sorry. I don't have it. All I can judge him on is what he is and what he is, is a juvenile delinquent who's now become a major felon and he's never been anything else. That is the story of his life. And you know what? We're fortunate that we had the parents we did, he's unfortunate, but that is what created the monster that he is."

- "This is as bold as the Old West. You know, we can't have these urban Visigoths who are tearing our cities apart. He belongs in jail, and he belongs in jail for a very long time. He is innocent looking. He is young looking. The jurors actually hold out some of the charges against him, which I believe I would have found him guilty of because of what he looks like. But, he's a demon. This is a bad human being sitting next to you."

- "How can they give him a conscience? That's what he doesn't have."

- "He's antisocial. He lacks conscience."

- "[He] is sociopathic no matter what was said."

Notes of Testimony, 12/13/2013, at 18-32. To call any person (even a convicted defendant) standing before the court a "sociopath," a "monster," a "demon," a "complete loser," "an urban Visigoth," and irreparably "damaged goods" is to demonstrate bias. It is unnecessary. It is unseemly. It is hectoring. It is unbecoming of a judge or a court. It does little but diminish the judiciary. Indeed, while doubtless intended to ridicule the defendant, it has the effect ultimately of holding the court up to ridicule.

I do not dismiss such language as merely "colorful." The statements were hostile and inflammatory, and exhibited a clear bias on the part of the trial court. We recently have written:

The sentencing decision is of paramount importance in our criminal justice system, and must be adjudicated by a fair and unbiased judge. This means, a jurist who assess[es] the case in an impartial manner, free of personal bias or interest in the outcome. Because of the tremendous discretion a judge has when sentencing, a defendant is entitled to sentencing by a judge whose impartiality cannot reasonably be questioned. A tribunal is either fair or unfair. There is no need to find actual

prejudice, but rather, the appearance of prejudice is sufficient to warrant the grant of new proceedings.

*Commonwealth v. Williams*, 69 A.3d 735, 744 (Pa. Super. 2013) (citations and internal quotation marks omitted). In *Williams*, this Court concluded that a sentencing court's motives and remarks exhibited bias because the court focused upon the defendant's burglarizing Catholic institutions, assailed prior adjudications as "mistakes" for being too lenient, attempted to "sanitize" its inquiries by goading the defendant into contradicting herself, and imposed a revocation sentence that was "severe on its face" because the defendant would not be eligible for parole for thirty-one years. *Id.* at 742. We observed:

> If the invocation of such rhetoric is relied upon to serve as the foundation of subsequent conclusions, as it clearly was in this instance, the bias necessarily affects the conclusion. The trial court's description of Appellant as being a "pathological liar" and a "classic sociopath" lacks any support in the record, and that error is not trivial in this instance. The bias it signals cannot be ignored when the trial court premises the imposition of such a severe sentence on the balance between Appellant's "extremely low potential for rehabilitation against the duty to protect the public."

*Id.* at 748. "Viewed collectively, the trial court's [statements] strike a tone of advocacy rather than dispassionate reflection. This accumulation of inappropriate remarks leads us to conclude that Appellant's sentence cannot be divorced from the appearance of bias." *Id.* at 744.

There is little difference between the instant case's references to Appellant as a demon and a monster and our other cases that condemn references to a convicted defendant as an animal.

> In regarding appellant, and in addressing him, as an animal, the sentencing judge violated the most fundamental premise of our law—that all persons are to be treated equally.  That does not mean that some persons will not be punished for having violated the law. . . .  But no one is punished as an animal is punished.

*Commonwealth v. Spencer*, 496 A.2d 1156, 1165 (Pa. Super. 1985).[1]

Of course, I could simply cast my lot with the Majority and conclude that the trial court's statements were "colorful" but not sufficiently egregious to merit relief, or that the rest of the trial court's rationale minimizes the seriousness of these remarks.  But I would then be faithless to the traditions of our law.  Appellant is not a monster, nor a demon.  He is a man.  Perhaps he is a very bad man.  Perhaps he deserved a sentence every bit as severe as this trial judge imposed upon him.  But Pennsylvania law does not confuse the sentencing of human beings with the confinement or chastisement of animals, or the crushing of monsters or demons.  *See Spencer*, 496 A.2d 1165.  Once we start confusing the human with the non-

---

[1]     While our Supreme Court "has declined to proscribe animal imagery in penalty-phase closing arguments," *Commonwealth v. Paddy*, 800 A.2d 294, 325 (Pa. 2002), it is not for the court to practice "vigorous prosecutorial advocacy," *Commonwealth v. Miles*, 681 A.2d 1295, 1302 (Pa. 1996), but to render a sentence with "dispassionate reflection." *Williams*, 69 A.3d at 744.

human, we have begun our descent down a worrisome path. The court's statements do more than give me pause. They undermine—quite fatally—my faith in the sentencing court's impartiality and my customary willingness to afford that court the benefit of the doubt in all other particulars.

The trial court was no doubt frustrated and appalled by Appellant's criminal acts, as well as Appellant's refusal to take the proceeding seriously. But that does not permit the trial court to act with animosity and disgust. As Judge Shoyer wrote in his concurring opinion in **Spencer**, "[t]he sentencing judge should appear as the fountainhead of justice, not the spirit of revenge." **Id.** at 1166 (Shoyer, J., concurring). This matter should be returned to the trial court for a sober and dignified proceeding governed by law, not passion.

I express no view on the appropriate length of sentence here; I express only a view on the appropriate conduct of sentencing.

Because the Majority functionally ignores the trial court's statements and declines to afford Appellant relief, I must respectfully dissent.