J-S01010-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| ELIJAH JACKSON, | : | |
| | : | |
| Appellant | : | No. 825 EDA 2014 |

Appeal from the Judgment of Sentence February 27, 2014
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No. CP-51-CR-0005328-2011

BEFORE:  GANTMAN, P.J., MUNDY and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                    **FILED MARCH 16, 2016**

Elijah Jackson ("Jackson") appeals, *pro se*, from the judgment of sentence imposed following his conviction of two counts of aggravated assault.[1]  We affirm.

The trial court set forth the relevant factual and procedural history, which we adopt for the purpose of this appeal.  **See** Trial Court Opinion, 7/15/15, at 1-6.

Jackson filed a timely Notice of Appeal.  The trial court ordered Jackson to file a Pennsylvania Rule of Appellate Procedure 1925(b) concise statement.  Jackson filed a Motion for Extension of Time to File a Pa.R.A.P. 1925(b) Statement on April 7, 2014.  The trial court granted the Motion, allowing Jackson an additional 30 days to file a concise statement.  Jackson's counsel filed a statement of intent to file a brief pursuant to **Anders v.**

---

[1] 18 Pa.C.S.A. § 2702(a).

*California*, 386 U.S. 738 (1967).  Pursuant to a directive from this Court,

the trial court conducted a *Grazier*[2] hearing on March 19, 2015, and

Jackson was permitted to proceed *pro se*.

On appeal, Jackson raises the following questions for our review:

I. Whether [the] prosecutor expressed his personal opinion to the jury as to the falsity of [Jackson's] testimony [] in violation of [Jackson's] [F]ifth and [F]ourteenth [A]mendment rights to due process of law[,] where[] the prosecutor subliminally induced the jurors to believe [that] if [Jackson] [was] not found guilty of aggravated assault on a police officer[,] [Jackson] and his wife may win a lawsuit against the city of Philadelphia?

II. Whether the prosecutor prejudiced the jury against [Jackson,] in violation of [Jackson's] [F]ifth and [F]ourteenth [A]mendment rights to due process of law[,] [where] the prosecutor lied to the jury [by] stating that [Jackson] was going for the officer's gun during the struggle between the officer and [Jackson,] and [by stating] that there [was] an [eyewitness] to this event?

III. Whether the [trial court's] [O]pinion pursuant to Pa.R.A.P. 1925(a)[] is [] advocacy for the district attorney in violation of [the] Code of Judicial Conduct, specifically Canon 1[] and Canon 2?

Brief for Appellant at 4.

In his first claim, Jackson argues that the prosecutor improperly

expressed his personal opinion as to the falsity of Jackson's testimony.  *Id.*

at 7.  Jackson also asserts that the prosecutor improperly questioned Officer

John Ciarlante ("Officer Ciarlante") regarding the civil complaint Jackson had

filed against the Philadelphia Police Department.  *Id.* at 7-8.

The standard of review for a trial court's evidentiary rulings is narrow.  The admissibility of evidence is solely within

---

[2] *See Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998).

the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

*Commonwealth v. Hanford*, 937 A.2d 1094, 1098 (Pa. Super. 2007) (citations and quotation marks omitted).

In its Opinion, the trial court set forth the relevant law, and determined that the existence of Jackson's civil suit could be properly introduced at his criminal trial to demonstrate possible bias, and that the prosecutor did not express his personal opinion while examining Officer Ciarlante. *See* Trial Court Opinion, 7/15/15, at 7-8. We adopt the sound reasoning of the trial court for the purpose of this appeal. *See id.*

In his second claim, Jackson asserts that the prosecutor lied during his opening statement by indicating that a civilian eyewitness would testify that Jackson had reached for Officer Ciarlante's handgun.[3] Brief for Appellant at 9. Additionally, Jackson claims that the prosecutor violated several ethical standards by asserting his personal opinion regarding the eyewitness's credibility. *Id.* at 10-11.

The trial court set forth the relevant law, and determined that the statement in question did not constitute prosecutorial misconduct. *See* Trial

---

[3] Specifically, Jackson cites to the following statement made by the prosecutor during his opening statement: "The eyewitness who I'll get to, a civilian, sees [Jackson] going for the officer's firearm, his handgun." N.T., 7/17/13, at 24-25.

- 3 -

Court Opinion, 7/15/15, at 9-10. We adopt the sound reasoning of the trial court for the purpose of this appeal. *See id.*

In his third claim, Jackson argues that the trial court's Opinion, filed pursuant to Pa.R.A.P. 1925(a), constitutes advocacy on behalf of the prosecution. *See* Brief for Appellant at 11-12.

Pennsylvania Rule of Appellate Procedure 1925(a) sets forth the trial court's requirement to issue an opinion in support of an order. *See* Pa.R.A.P. 1925(a)(1) (directing the trial court, upon receipt of a notice of appeal, to "file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of, or shall specify in writing the place in the record where such reasons may be found."). "The obvious purpose of Pa.R.A.P. 1925(a) is to facilitate appellate review of a particular trial court order. Additionally, [] the rule … [provides] … the legal basis for a judicial decision." *Commonwealth v. DeJesus*, 868 A.2d 379, 383 (Pa. 2005); *see also Commonwealth v. Williams*, 732 A.2d 1167, 1176 (Pa. Super. 1999) (stating that "this Court has not prohibited the adoption of portions of a party's arguments in support of a judicial disposition.").

Subsection (b) allows the trial court to order an appellant to file a Concise Statement of Matters Complained of on Appeal. *See* Pa.R.A.P. 1925(b). A concise statement submitted pursuant to subsection (b) identifies the issues an appellant intends to challenge, and preserves those issues for appeal. *See* Pa.R.A.P. 1925(b)(i), (vii); *see also*

***Commonwealth v. Osteen***, 552 A.2d 1124, 1126 (Pa. Super. 1989) (stating that "[t]he purpose of the Pa.R.A.P. 1925(b) statement is to specify the particular issues which [the] appellant intends to present on appeal in order to permit the trial court an opportunity to provide the appellate court with a focused and meaningful explanation for any challenged actions in its Pa.R.A.P. 1925(a) opinion.").

Here, the trial court ordered Jackson to file a Pa.R.A.P. 1925(b) concise statement setting forth the claims he intended to raise on appeal, and the trial court thereafter issued its Opinion in support of the judgment of sentence, pursuant to the directive of Pa.R.A.P. 1925(a). In doing so, the trial court did nothing more than provide its reasons for denying Jackson relief, and did not become an advocate for the prosecution. Thus, this claim is without merit.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/16/2016

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CRIMINAL SECTION

Commonwealth of Pennsylvania      :      CP-51-CR-0005328-2011

                                  :

         v.                       :

                                  :



Elijah Jackson                           SUPERIOR COURT
                                         NO. 825 EDA 2014

7319580711

OPINION

**FILED**

JUL 1 5 2015

Criminal Appeals Unit
First Judicial District of PA

Ehrlich, J.

Elijah Jackson, hereinafter Appellant, was found guilty of two counts of aggravated assault after a jury trial on July 22, 2013.[1] The charges stem from an altercation with police officers in North Philadelphia on April 19, 2011. Appellant was sentenced on February 27, 2014, to a term of seven to twenty years' incarceration. A timely appeal followed.

Instantly, Appellant claims two points of error:

I.     The prosecutor expressed his personal opinion to the jury as to the falsity of the testimony of the defendant in violation of the defendant's fifth and fourteenth amendment rights to due process of law; whereas the prosecutor subliminally induced the jurors to believe if the defendant is not found guilty of aggravated assault on a police officer the defendant and his wife may win a lawsuit against the City of Philadelphia.

II.    The prosecutor prejudiced the jury against the defendant in violation of the defendant's fifth and fourteenth amendment rights to due process of law; the prosecutor lied to the jury stating that the defendant was going for the officer's gun during the struggle between the officer and the defendant; and stated that there is an eye witness to this event.

---

[1] 18 Pa.C.S.A. § 2702(a).

Appellant's Pa.R.A.P. 1925(b) Statement, 06/05/2015.

As will be discussed below, these claims are without merit. Accordingly, no relief is due.

The Evidence

On or around April 10, 2011, Appellant's white Dodge van was determined to be abandoned and towed by K&A Salvage. Notes of Testimony ("N.T."), 07/19/2013, at 6–9. Appellant testified that he first attempted to reclaim the vehicle on April 18. *Id.* at 8. He learned that K&A Salvage had already closed for the day, however, when he called at about 5:30 p.m. *Id.* at 9.

On April 19, 2011, Appellant was dropped off by a friend at K&A Salvage at approximately 4:15 in the afternoon. *Id.* at 10. Appellant brought his license, registration, and proof of insurance to the window, where a woman entered his information into a computer. *Id.* at 11–12. Appellant testified that at this time, a man entered the office and "had words" with the other individuals in the office. *Id.* at 12. Appellant stated that he could not hear what was said through the window, but that the man "threw my paperwork up in the window and told me, we are closed." *Id.* Appellant became upset and called the police. *Id.* He stated that he "saw them trying to rush the tow truck in before the cops got there" and called for the police a second time. *Id.* at 13. However, he later testified that he never saw his van that day and did not know what might be happening with it. *Id.* at 19.

Alphonso Lee was visiting his friend, the owner of K&A Salvage, on the afternoon of April 19, 2011. N.T., 07/17/2013, at 45. Mr. Lee saw Appellant at the window of K&A Salvage yelling at the person in the office. *Id.* at 47. Mr. Lee could not see who Appellant was arguing with, but heard him yelling "something to the effect of, 'you stole my fucking car.' 'You stripped

- 2 -

my damn car.' 'Why can't I get my car.'" *Id.* at 48. Mr. Lee eventually went into the office to ask his friend what was going on. *Id.*

Mr. Lee then saw two police officers arrive on the scene and approach Appellant to attempt to speak to him. *Id.* at 49. The officers were later identified as Officer John Ciarlante (who Mr. Lee referred to as "the hurt officer") and Officer Keith Stefankiewicz (who he referred to as "the other officer"). *Id.* at 50–51. Mr. Lee stated that Appellant was hostile with the officers when they arrived and continued yelling. *Id.* at 52.

Officer Ciarlante spoke to the owner of K&A Salvage while Officer Stefankiewicz asked Appellant for information about the vehicle. *Id.* at 129. Officer Ciarlante returned and explained that Appellant needed to come back the next day, because the salvage yard was closed. *Id.* at 130. Appellant "started screaming and yelling saying, Fuck you. Fuck you. Do your job, mother-fucker" at the officers. *Id.* at 131. Mr. Lee observed that the officers remained polite and were attempting to get Appellant to calm down. *Id.* at 53. Appellant then demanded to speak to a supervisor, and appeared to be dialing his phone for that purpose. *Id.* at 135.

At this time, a red Cadillac arrived on the scene, driven by a woman Appellant identified as his wife, Keya Cooper. *Id.* at 135–36. The officers decided to explain the situation to Appellant's wife, because Appellant was so upset. *Id.* at 136. As Officer Ciarlante approached the Cadillac, Officer Stefankiewicz went to the rear of the patrol car to place his jacket in the trunk. *Id.* When he saw Officer Ciarlante approaching, Appellant began yelling at him not to talk to his wife. *Id.* at 54, 136. Officer Ciarlante then began to move away from the vehicle, and Mr. Lee testified that "[t]he officer turned around. And out of nowhere he [Appellant] ran about five or six steps and tackled the cop." *Id.* at 56. Mr. Lee then observed Officer Ciarlante hit his head on the concrete pavement, and the two began wrestling on the ground. *Id.* at 57. When

- 3 -

Officer Stefankiewicz looked up at the scene, he saw Appellant's arm around Officer Ciarlante's neck and went to help his partner. *Id.* at 137.

As Officer Stefankiewicz went to aid his partner, Ms. Cooper, Appellant's wife, exited her vehicle and grabbed Officer Ciarlante's shoulders. *Id.* at 59, 137. Officer Stefankiewicz gave verbal commands to Ms. Cooper to return to her vehicle, but she did not comply. *Id.* at 59. Officer Stefankiewicz removed Ms. Cooper from Officer Ciarlante and again instructed her to return to her vehicle or she would be arrested for assaulting an officer. *Id.* at 137. Officer Stefankiewicz testified that he saw Ms. Cooper trip as she returned to her car. *Id.*

When Officer Stefankiewicz returned to helping his partner, Appellant was on top of Officer Ciarlante. *Id.* at 138. Mr. Lee observed Appellant's hands in the area where Officer Ciarlante's firearm was holstered. *Id.* at 57. He also testified that it appeared to him that the officer was attempting to push his gun back into its holster at this point. *Id.* at 57–58. Officer Stefankiewicz was also concerned when he observed his partner apparently attempting to keep his gun holstered. *Id.* at 138. Officer Stefankiewicz began giving verbal commands to Appellant to get off Officer Ciarlante, and pulled out his asp. *Id.* He struck Appellant once in the ribcage area with the asp, but Appellant remained on top of Officer Ciarlante. *Id.* Officer Stefankiewicz struck Appellant two more times with the asp before Appellant released his grip on Officer Ciarlante. *Id.* at 139. Officer Stefankiewicz was able to place his handcuffs on one of Appellant's wrists, but Appellant continued to resist despite verbal commands to stop. *Id.* Officer Ciarlante then pushed Appellant's hand as he removed himself from underneath Appellant, and Officer Stefankiewicz was able to secure the handcuffs on both of Appellant's wrists. *Id.*

- 4 -

Mr. Lee, who had been observing the events, called the police to request assistance for the two officers. *Id.* at 64. When more police arrived at the scene, he saw Ms. Cooper drive away in her vehicle. *Id.* at 60–61. Mr. Lee did not see her return to the scene. *Id.* at 61. Mr. Lee also testified that he was formerly in the Navy, and had a firearm on his person the day of the incident. *Id.* at 62-63. He stated that he considered using his own firearm when "it appeared that the defendant might pull the officer's gun." *Id.* at 63.

Officer Ciarlante initially returned to the police station to give his statement following the incident. N.T., 07/18/2013, at 27. He went to the hospital later that night for treatment of his injuries. *Id.* at 31. Officer Ciarlante testified that he had a throbbing headache and both ears were ringing from when his head hit the ground. *Id.* He also had blurry vision in his left eye, and was diagnosed with a concussion. *Id.* at 32–33. Officer Ciarlante testified that he slept very often in the months following the incident, and could not tolerate loud noises or bright light. *Id.* at 34. He saw a specialist for his hearing, and was given hearing aids to reduce the constant ringing in his ears. *Id.* at 34–35.

Officer Ciarlante testified that he wanted to continue working as a police officer, but could not because his status was Injured on Duty ("IOD"). *Id.* at 36. He testified that he would do office work for approximately four hours a day, but the sound of the phones ringing would cause added stress to his hearing problems. *Id.* at 36–37. At the time of trial, Officer Ciarlante testified that he had lost hearing in his left ear, and his hearing in his right ear was impaired. *Id.* at 37–38.

Appellant and his wife, Keya Cooper, both testified as well, and offered significantly different accounts of the incident than those of the officers and Alphonso Lee. Appellant testified that he was upset about his vehicle being towed, but that he never yelled at the officers.

N.T., 07/19/2013, at 15. Appellant claimed that both officers were very rude and sarcastic to him, but that he remained calm and never used profanity or cursed at the officers. *Id.* at 16–18.

Appellant further testified that when Officer Ciarlante approached the Cadillac, he told his wife to leave, because she had nothing to say to the officer. *Id.* at 22. After this, he testified, Officer Ciarlante pulled him back and shook him side to side, and he fell. *Id.* at 23–24. He testified that Officer Ciarlante then began choking him with both hands. *Id.* at 25. He testified that he told his wife to leave, and at that time Officer Ciarlante jumped on him and they both fell to the ground. *Id.* Appellant further testified that at this time, Officer Stefankiewicz began beating him with the asp, and hit Officer Ciarlante in the head in the process. *Id.* at 25–26.

Appellant was taken to the hospital immediately following the incident and x-rayed. *Id.* at 52–53. He was discharged after approximately three-and-a-half hours, although he testified that he was only there for thirty minutes. *Id.* at 52. Appellant testified that he did not receive proper treatment and required crutches, although he was not issued crutches by the hospital. *Id.* at 53–54. Appellant and his wife filed an official complaint against Officers Ciarlante and Stefankiewicz on April 20, 2011, the day after the incident. *Id.* at 40–41. Appellant also testified that he went to Albert Einstein Hospital for further medical attention on April 21. *Id.* at 42. He stated that he did not receive treatment immediately "because it was a police brutality case, a lot of doctors don't want to touch it." *Id.* at 43.

It was Appellant's testimony that he never struck the officers, and never swore at them or tackled Officer Ciarlante to the ground. *Id.* at 49.

## Discussion

### *Questions Regarding Civil Suit*

Appellant's first claim on appeal is that the prosecutor improperly expressed his personal opinion when questioning Officer John Ciarlante regarding a civil complaint Appellant filed against the Philadelphia Police Department. Appellant specifically cites to the following exchange, during the prosecution's re-direct examination of Officer Ciarlante, in his Rule 1925(b) statement:

> BY MR. D'ANDREA [Prosecutor]:
> Q: To the best of your knowledge, the defendant is looking for a pay day, suing the police of [sic] money?
>
> A [Officer Ciarlante]: April sixteenth of civil suit, this year, 2012.[2]
>
> Q: Of this year. When he knows the trial is coming up, he sues the city of Philadelphia for money?
>
> MR. HARRISON [Defense Attorney]: Objection.
>
> THE WITNESS: There is an Internal Affairs complaint, police brutality/police misconduct. He filed that. When I went to Internal Affairs they did an investigation. I seen [sic] a copy of the exoneration letter. And I received notification, April 19th of this year, that I have to go to City Solicitor's Office because he's suing civilly.
>
> BY MR. D'ANDREA: For money?
>
> A: For $50,000 each.
>
> Q: So $100,000 total?
>
> A: $50,000, he's suing and the female is suing for $50,000.

N.T., 07/18/2013, at 83–84.

---

[2] Officer Ciarlante refers to the lawsuit as having been introduced "this year," which would in fact have referred to April 16, 2013, not 2012. Further testimony from Officer Ciarlante, as well as Appellant's own testimony, confirms that the civil suit was initiated in 2013. N.T., 07/19/2013, at 48.

The reference to the civil suit was also addressed on cross-examination by Appellant's trial counsel following this exchange.

"As a general rule, evidence of interest or bias on the part of a witness is admissible and constitutes a proper subject for cross-examination." *Commonwealth v. Birch*, 532 Pa. 563, 566, 616 A.2d 977, 978 (1992). "Introduction of the existence of the civil suit in a criminal case is permissible to show the complainant's possible bias and interest in the outcome of the case." *In re R.D.*, 44 A.3d 657, 676 (Pa. Super. 2012) (*internal citations omitted*). *See also Commonwealth v. Hanford*, 937 A.2d 1094, 1099 (Pa. Super. 2007), *appeal denied*, 598 Pa. 763, 956 A.2d 432 (2008).

In the instant case, Appellant's civil suit was used to demonstrate possible bias. The complaint and lawsuit were also discussed during the testimony of Appellant, and that of his wife, Keya Cooper. N.T., 07/18/2013, at 145–46, N.T., 07/19/2013, at 57–61. The prosecutor cross-examined both individuals regarding the lawsuit in order to further establish their possible bias. Pennsylvania courts have long held that the mention of a civil suit for the purpose of showing possible bias is permissible. *See Birch*, 532 Pa. at 566, 616 A.2d at 978 ("As a general rule, evidence of interest or bias on the part of a witness is admissible and constitutes a proper subject for cross-examination."); *Commonwealth v. Mullins*, 665 A.2d 1275, 1277 (Pa. Super. 1995) ("a witness may be cross-examined as to any matter tending to show interest or bias.").

For these reasons, this court did not exclude mention of the civil suit during Appellant's criminal trial. Nor has this court, upon review of the record, found that the prosecutor expressed his personal opinion, as Appellant contends, while examining the witness. Appellant's first claim is therefore without merit, and no relief is due.

- 8 -

*Opening Statement*

Appellant next claims the prosecutor made improper statements in his opening remarks, specifically when referencing an eyewitness to the events in question, and stating that this witness saw Appellant reach for the officer's firearm. For the reasons outlined below, this claim is also without merit.

> In reviewing the prosecutor's comments, we note that a prosecutor must be free to present his or her arguments with logical force and vigor. Reversible error only exists if the prosecutor has "deliberately attempted to destroy the objectivity of the fact finder" such that the "unavoidable effect" of the inappropriate comments would be to create such bias and hostility toward the defendant that the jury could not render a true verdict. This is a decision for the trial court that will not be disturbed absent an abuse of discretion.

*Commonwealth v. Miles*, 545 Pa. 500, 511, 681 A.2d 1295, 1300 (1996) (internal citations and quotations omitted).

In his opening, the prosecutor made the following statement that Appellant specifically cited in his 1925(b) Statement: "The eyewitness, who I'll get to, a civilian, sees the defendant going for the officer's firearm, his handgun." N.T. 07/17/2013, at 24–25.

> Regarding the merits of this issue, remarks in a prosecutor's opening statement must be fair deductions from the evidence that he or she in good faith plans to introduce and not mere assertions designed to inflame the passions of the jury. The prosecution is not required to conclusively prove all statements made during the opening argument. If the prosecutor has a good faith and reasonable basis to believe that a certain fact will be established, he or she may properly refer to it during the opening argument. Even if an opening argument is somehow improper, relief will be granted only where the unavoidable effect is to so prejudice the finders of fact as to render them incapable of objective judgment.

*Commonwealth v. Brown*, 551 Pa. 465, 490–91, 711 A.2d 444, 456 (1998) (internal citations omitted).

The remark at issue specifically referred to the prosecution's first witness, Alphonso Lee. Mr. Lee is in no way affiliated with the Philadelphia Police Department, which is why he was

referred to as a "civilian." N.T., 07/17/2013, at 44. Mr. Lee was present at K&A Salvage on April 19, 2011, for reasons unrelated to Appellant's vehicle, and did not know Appellant prior to this date. *Id.* at 46. He had also never seen or interacted with either Officer Ciarlante or Officer Stefankiewicz prior to April 19, 2011. *Id.* at 50. During his testimony describing the events of that afternoon, Mr. Lee stated that "[Appellant's] hands was in that area and the cop had his hand on his gun pushing down in his holster." *Id.* at 57. He also testified that "it appeared that the defendant might pull the officer's gun." *Id.* at 63. This testimony was precisely what the prosecutor was alluding to in his opening remarks.

While the opening statement provides the prosecutor the opportunity to give an outline of the Commonwealth's case, "a prosecutor's comments are not evidence. Indeed, the trial court clearly and repeatedly so instructed the jury, which is presumed to follow the court's instructions, on this rule of law." *Commonwealth v. Gibson*, 547 Pa. 71, 95, 688 A.2d 1152, 1164 (1997) (internal citations omitted). Here, the jury was instructed that the opening statements, and all statements made by counsel, were not to be considered evidence. N.T., 07/17/2013, at 16. Rather, this court instructed the jury that opening statements were only meant to provide a general outline of the case. *Id.*

The prosecutor's opening statement presented the case in a persuasive manner, but did not "deliberately attempt to destroy the objectivity" of the jury. Rather, the statement was made as part of a general overview of the prosecution's case and referred to specific testimony that was later elicited from a witness. Therefore, this court does not believe the statement in question constituted prosecutorial misconduct. For this reason, Appellant's second and final claim is also without merit.

## Conclusion

In summary, this court has carefully reviewed the entire record and finds no harmful, prejudicial, or reversible error and nothing to justify the granting of Appellant's request for relief. For the reasons set forth above, the judgment of the trial court should be affirmed.

_____

J.